### Bush *et al.*, *Appellants*, v. Bush *et al*.

1. **Will : UNDUE INFLUENCE : EVIDENCE.** On the trial of an issue whether or not a will was made under undue influence, declarations of the alleged testator, made before and after its execution, are inadmissible as evidence of the facts mentioned in such declarations.

2. ——— : ——— : ———. Such declarations are only admissible when the condition of the testator's mind is the point of contention, or it becomes material to show the state of his affections, and they are then received as external manifestations of his mental condition and not as evidence of the truth of the facts referred to in the declarations.

3. **Evidence.** The declarations of a legatee and a co-defendant, tending to show that she exercised undue influence on the mind of the testator, are not admissible where the petition does not charge her with its exercise.

4. **Question for Jury.** Under the evidence in this case, *held*, that the question whether or not the will was made under undue influence should have been submitted to the jury.

*Appeal from Marion Circuit Court.*—HON. THEODORE BRACE, Judge.

REVERSED.

*Smith & Krauthoff* and *W. P. Harrison* for appellants.

(1) The court erred in giving defendants' instruction which was in effect a demurrer to the evidence and a ruling that there was no evidence tending to show testamentary incapacity or undue influence. *Buesching v. Gas Light Co.*, 73 Mo. 219 ; *Frick v. Ry.*, 75 Mo. 601. A testament made by over importunement is ineffectual. " As if a man make his will in sickness by the over importuning of his wife to the end that he may be quiet, this shall be said to be a will by constraint and shall not

Bush v. Bush.

be a good will." 1 Jarmon on Wills (5 Am. Ed. by Randolph & Talcott) 131 ; 1 Redf. on Wills (4 Ed.) 516 ; *Potts v. House*, 6 Ga. 324 ; *Davis v. Calvert*, 5 Gill & J. 269 ; *Hall v. Hall*, 37 L. J. P. 40 ; *Boyce v. Rossborough*, 6 H. L. J. Cas. 2, 49. Undue influence is seldom proved by direct evidence. *Tyler v. Gardiner*, 35 N. Y. 559 ; *Baker's will*, 2 Redf. (Sur.) 179 ; *Young v. Ridenbaugh*, 67 Mo. 574 ; *Clark v. Stansbury*, 49 Md. 346. The circumstance that those around the testator received all the property and the absent children nothing is entitled to great consideration. *Goble v. Grant*, 2 Green Ch. 629 ; *St. Leger's Appeal*, 34 Conn. 434. (3) It is neither essential nor important that the influence should be exercised at the time when the will is executed. Influence exercised at any time, the effect of which is to produce the will, is sufficient. 1 Redf. on Wills (4 Ed.) 528 ; *Taylor v. Wilburn*, 20 Mo. 306 ; *Roberts v. Tranick*, 17 Ala. 55. (4) The court erred in excluding the statement of Rosa Bush to Mrs. Baird. *Fairchild v. Bascomb*, 35 Vt. 398 ; *Robinson v. Hutchinson*, 31 Vt. 443 ; *Davis v. Calvert*, 5 G. and J. 269 ; *Lewis v. Mason*, 109 Mass. 169 ; *Florey v. Florey*, 24 Ala. 241 ; *Mullen v. Helderman*, 87 N. C. 471. (5) The ruling of the court in excluding declarations of the testator made shortly before and soon after the execution of the will was erroneous. *Robinson v. Hutchinson*, 26 Vt. 38 ; *Dennis v. Weeks*, 51 Ga. 24 ; *Waterman v. Whitney*, 11 N. Y. 157 ; *Reynolds v. Adams*, 90 Ill. 134 ; *Potter v. Baldwin*, 133 Mass. 427 ; *Young v. Ridenbaugh*, 67 Mo. 574.

*Edward McCabe* for respondents.

(1) The declarations of the testator were not competent evidence on the subject of undue influence and as evidence of facts. *Gibson v. Gibson*, 24 Mo. 227 ; *Cauthorn v. Hayes*, 24 Mo. 237 ; *Spoonemore v. Cables*, 66

Mo. 579. (2) The testimony excluded, in its utmost scope, would have fallen far short of establishing anything like fraud, or that undue influence which is held sufficient to vitiate a will. Honest and moderate intercession or persuasion or flattery, unaccompanied by fraud or deceit, and when the testator has not been put in fear by the flatterer or persuader, or by his power and dominion over him, will not have that effect. *Davis v. Calvert,* 5 G. and J. 269 ; *Brown v. Molliston,* 3 Whart. 129. (3) The court did not err in excluding the statement of Rosa Bush to Mrs. Baird, for the former is not charged in the petition with having exerted undue influence over her father in procuring the will. (4) The only witness who expressed any doubt as to the testamentary capacity of the testator was J. B. Lewis and this doubt was simply as to capacity to transact ordinary business. This evidence did not warrant the court in submitting the case to the jury.

HENRY, C. J.—This is a proceeding commenced in the circuit court of Marion county to contest the validity of the will of John Bush, deceased. The will was dated October 10, 1876, and a codicil was made January 1, 1877. On the trial, the defendants, proponents of the will, offered as evidence the will and codicil, and proved its execution and attestation by the subscribing witnesses. Also introduced testimony tending to prove testamentary capacity of the testator, and closed.

Plaintiff's testimony disclosed the following facts : That the testator had been married twice, and had five children living by his first wife, and four grandchildren, who were the children of a deceased daughter of his first wife. That at the date of the will, his second wife and three children of that marriage were alive. To each of the children of his first wife, and his grandchildren he bequeathed one dollar, having given to his sons by his first wife each about fifteen hundred dollars and provided

for the daughters of that marriage. It appears that the daughter of that marriage, still living, Mrs. Baynum, received from her father at her marriage about fifteen hundred dollars. It does not appear how much he had given the other daughter, Mrs. McWilliams. By the will and codicil in question, all the property he had was given to his wife, but about the time that the will was made he conveyed to Franklin W. Bush, a son of the last marriage, two hundred and forty acres of land in Marion county, worth thirty-five or forty dollars per acre, and to Laura Rush, a daughter by the last wife, a tract of one hundred and eighty-three acres of land in said county, of about the same value as that conveyed to Franklin. It also appears in his will, that, on the day of the date of his will, he had conveyed to Rosa, a daughter of the last marriage, a tract of land, but of what amount or value does not appear. The testimony of Mr. Boulware, the attorney who wrote the will, as to the circumstances under which the will was prepared, is to the effect that on the day the will is dated he was informed that Mr. Bush wished him to call at at his residence. That he called and made a memorandum by which to prepare his will. Witness went there with Dr. Bush, testator's son. No other member of the family was in the room when he first called. Mr. Bush's desire was to make a deed to take effect after his death and had had deeds prepared, but Mr. Boulware explained to him the effect of such a conveyance. He then concluded to make deeds to his children, and provide for his wife by will. Witness made the memoranda. He had expressed his purpose to give his wife the house they were residing in and furniture and four thousand dollars. Mrs. Bush, who had come into the room, suggested that instead of four thousand dollars he give her the balance of the estate, and witness then said to Mr. Bush, that as he, Bush, had indicated that the balance would be four thousand dollars, it would be the same thing, and he acted on the sug-

gestion. Mr. Boulware took the memoranda to his office to prepare the will next day, but received information that induced him to prepare the will that night, and it was signed by the testator about eleven o'clock that night.

After the making of the will, about the last of December, 1876, Mrs. Baynum, the testator's daughter by his first wife, went to see her father, who was supposed to be in a critical condition, and stayed there two or three weeks ; on the day before the codicil to the will was made, she testified that she and Laura, Rosa and Mrs. Ellis were by Mrs. Bush invited out of the room in which Mr. Bush was confined. It was but a short time after that Laura and Rosa were invited back by Mrs. Bush. Then Mrs. Baynum went to the door to go into the room, but was pushed back by Mrs. Bush and not permitted to enter. The next day Mrs. Bush proposed to Mrs. Baynum that the latter should go to Mr. Whaley's but she said she did not wish to go, but Mrs. Bush and Rosa insisted, and witness went over to Mrs. Whaley's, and spent the day. She again visited her father in May, 1877, and he inquired if her brother William had sent him any word, and witness told him that William told her to say to him that he, William, had been keeping his brother Jim as long as he could, and he wanted the others to help. Laura got angry and said that witness had come begging, that they were always after something. That we had got all we would ever get. Her father did not hear what was said, but seeing witness crying, asked her what was the matter, and she told him that Laura had mistreated her, but Laura denied it all.

Plaintiffs offered to prove by one Jno. B. Lewis, that the testator in September, 1876, had stated to him that he had to do as his wife and younger children told him, in order to have peace. That he was getting old and feeble and had not long to live. That he was not satisfied with the way they wanted to fix his business and property for

him, and shed tears. They also offered to prove by one Robbins, statements made to him by the testator in June, 1877, after the will was made, to the effect that he was controlled in the disposition of his property by his wife and her children. That he always intended to give his children of the first marriage an equal portion of his estate with the children of the last marriage, but was prevented from doing so by the latter and his wife. This evidence the court excluded. The court also excluded that portion of the deposition of Mrs. H. T. Baird in which she stated that Rosa, who was at school at Ingleside college, and at her own request was permitted to go home, in the conversation in which she made the request, *spoke to witness about her father's will or the alterations of it,* and said : " *We have persuaded him to change his will, and I want to go home to help keep him in the notion. I am afraid he will get out of the notion before the lawyer comes.* The older children have had their share and spent it, and we all think they ought not to have any more." The portions italicised were excluded.

At the close of the testimony, the court instructed the jury that, " The plaintiffs having failed to offer any evidence tending to show that the said John Bush was mentally incapable of making said will, and having failed to show that the execution of said will by said John Bush was produced by any undue influence exercised over the mind of said Jno. Bush by the defendants or either of them, they will find the issue submitted for the defendants." The verdict of the jury was in accordance with this instruction, and from the judgment thereon this appeal is prosecuted.

The court did not err in excluding the testimony offered to prove the declarations made by the testator, either before or after the making of the will. This question was considered in the case of *Gibson v. Gibson,* 24 Mo. 227, and it was held by the court, in a very able opinion delivered by Judge Leonard, that such evidence

was inadmissible as a narrative of facts, but "admissible when the condition of the testator's mind is the point of contention, or it becomes material to show the state of his affections, and they are then received as external manifestations of his mental condition, and not as evidence of the truth of the facts he states." The testimony in the case at bar was not offered to show the condition of the testator's mind, or the state of his affections, but to prove the facts contained in the alleged statements. A similar ruling to that in *Gibson v. Gibson* was made in *Tingley et al. v. Cowgill*, 48 Mo. 291. We are aware that a different doctrine has been announced by other courts, but adhere to that which has prevailed in this court since the case of *Gibson v. Gibson* was decided.

Nor was any error committed in the exclusion of the testimony as to the declarations of Rosa made to Mrs. Baird. There is no charge in the petition that Miss Rosa exercised any undue influence over her father to procure the making of the will. The charge is that Mrs. Bush and Franklin and Laura Bush procured him to make it by exercising undue influence over him. We think, however, that the court erred in its instruction to the jury. There was evidence tending to prove that the will was procured by the exercise of undue influence over the mind of the testator. Whether sufficient to invalidate the will, we will not determine; but it should have been submitted to the jury. It devolved upon defendants, after the testimony of plaintiffs was adduced, to overcome that testimony and the inferences which might reasonably be drawn from it, by their own testimony, or such other as might have been at their command.

We have not deemed it necessary or proper to comment on the testimony. That portion which, we think, had a tendency to prove that defendants, by the exercise of undue influence over the testator, procured the making of the will, will be noted by one carefully exam-

ining the evidence. The judgment is reversed and the cause remanded.