[S. F. No. 2528.    Department Two. — May 29, 1901.]

In the Matter of the Estate of CATHERINE E. GREGORY, Deceased. A. C. FREESE, Public Administrator, and CHARLOTTE B. GREGORY, Appellants. ROBERT ASH, Respondent.

| 133 | 131 |
| d140 | 130 |
| 140 | 396 |
| 140 | 419 |
| e140 | 420 |
| 133 | 131 |
| 143 | 586 |
| 133 | 131 |
| 147 | 594 |
| 133 | 131 |
| e148 | 235 |

Estates of Deceased Persons — Contest of Probate of Will — Forgery — Undue Influence — Evidence — Declarations of Testator. — Upon the contest of the probate of a will upon the alleged grounds of forgery and undue influence, the declarations of the testator, bearing solely on those issues, and not upon the alleged want of mental capacity of the testator, are inadmissible.

Id. — Absence of Probate of Will — Suspension — Determination of Contest. — In such case, the offer to prove the will is suspended by the contest, and its execution being put in issue by the contest, the will cannot be probated until the contest is determined. The absence of the probate of the will is not a reason why the declarations of the testator should be admitted in favor of the contestant upon issues other than that of the mental capacity of the testator.

ID. — GENERAL OBJECTION TO EVIDENCE. — A general objection to evidence, without specification of the point of incompetency, is properly overruled, if the evidence is admissible for any purpose.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. James M. Troutt, Judge.

The facts are stated in the opinion.

J. D. Sullivan, for A. C. Freese, Public Administrator, Appellant.

Adams & Adams, for Charlotte B. Gregory, Appellant.

Robert Ash, and Lloyd & Wood, for Respondent.

CHIPMAN, C. — A. C. Freese, public administrator of the city and county of San Francisco, filed his petition for letters with the will annexed of Catherine E. Gregory, deceased, praying that it be admitted to probate. In the offered will, Charlotte B. Gregory, adopted daughter of deceased, is named as legatee, and Martha Munson, widow of the late John Munson, as guardian of Charlotte, but no executor was named. It was dated December 10, 1895. Deceased died about August 17, 1898. Robert Ash appeared as contestant, alleging that he is the executor named in the last will of deceased, dated March 22, 1892, and one of the legatees under said will, and guardian of the estate of Charlotte, who is also one of the legatees. As grounds of contest it is alleged, — 1. That the will of December 10, 1895, is a forgery, and was written by one W. C. Rippey; 2. That it was not signed by deceased in the presence of any witnesses, or acknowledged to have been signed by her; 3. That it "was prepared and procured by one W. C. Rippey, and obtained through the undue influence of the said W. C. Rippey and Martha Munson." The specification alleges that deceased was in ill health, was in the habit of drinking intoxicating liquors to excess periodically, was of nervous temperament, and susceptible of being easily influenced by persons in her company, who would supply her with liquors, a small quantity of which would affect her and render her incompetent to transact or understand important business transactions; that on said tenth day of December, 1895, the said Rippey and Munson were with deceased in her house, and induced her to drink in-

toxicating liquors, and deceased did drink such liquors and became under the influence thereof, and while in said intoxicated condition the said Rippey and Munson prepared the alleged will and induced deceased to sign the same. 4. The same specifications are stated in support of the allegation of fraud in the procurement of the will. The allegations of the contest were specifically denied.

Certain questions were submitted to a jury, to which they answered, in effect, that the alleged will was not signed by deceased in the presence of the attesting witnesses, or at all, nor acknowledged by her to have been signed, nor was it declared by her to be her will. The jury answered that deceased did not sign or acknowledge or declare the will to be her will under undue influence of either Rippey or Munson. The court adjudged that the will offered for probate is not the will of deceased, and denied it probate. The appeal is from the order denying motion for new trial, and is prosecuted by the public administrator, and by Charlotte, who appeared by attorney in the action. Mrs. Munson appeared at the hearing by counsel, but she does not appeal.

1. The question of first importance raised by the appellants relates to alleged error in permitting certain declarations of deceased to be given in evidence.

Contestant called James Geary as a witness, who testified, against proponents' objection, that he knew Mrs. Gregory in 1891; also, that he met her three months before her death, at which time she said, "I think I will die very soon. I have got everything in good shape. My will has been made, and I feel contented, if I do die." He stated that he had the child Charlotte at his house in 1891, and while there Mrs. Gregory spoke to him about making her will. "Three months later, after the child went home, she [Mrs. Gregory] told me she had made her will."

"Q. What did she say about it?—A. She told me she had made her will, and that Mr. Ash had consented to take care of the child and be guardian of the child, and that she had made it an object in her will for Mr. Ash to do so, and he had consented. This was late in 1892."

. He testified that he spoke with her concerning her property, and the disposition she had made of it in the event of her death, about three months before her death, and that she told him she had not made any other will.

Robert Ash testified in his own behalf. He had been Mrs. Gregory's attorney for several years, and attended to much of her business, for which he had been paid. Against proponents' objection, he was asked to and did identify a certain promissory note given by Rippey to deceased, and also a certain order for promissory notes purporting to be signed by deceased and delivered by Rippey to Ash.

"Q. State what Mrs. Gregory said about the genuineness of her signature as attached to this paper."

The question was objected to, and counsel for contestant stated that he offered it,—1. To show the influence that Rippey had over her; and 2. To show that Mrs. Gregory had repudiated the signature which counsel for proponent claimed compared with the signature attached to the will in dispute. By her declarations it was thus sought to establish the forgery of the will by showing what she said as to the genuineness of her signature to a certain paper.

He was then asked to state what Rippey was seeking to do "with regard to the making of a will by her, and the disposition of her property."—"A. It was about two weeks before this will in dispute was made. She said Rippey had been hounding her pretty nearly to death,—trying to get her to make a will in favor of the old woman, Mrs. Martha Munson, —annoying her all the time,—both Mrs. Munson and Rippey. She said, I don't know what he may do. He claims that he can prove and show that the child, Charlotte B. Gregory, was the child of young Jim Fair, and I have got to listen to some of his statements when he comes around in that way. I have been supporting him and taking care of him, and I don't know what he may do. She further said, I will go and get the letters to me on the subject of this note; and she went and got them and told me to keep all those papers, and said, You may need them some time; look out, now, I don't know what he may do. She also said that Mr. Rippey had been annoying her and trying to appoint Mrs. Munson as guardian of the child; and she said, He must think I am crazy, to place an old woman as guardian over that little girl. That is what she said, and she became indignant. At different times subsequent to December 10, 1895, I had conversations with the deceased regarding the matter of her will,—up to the time of her death. The night prior to the day before her death, she was sick in bed; she told me she thought she would never get out of the bed; that she was

going to die, and she said, I want you to carry out my will and take care of that little girl. I said, I will do it; don't worry about it. She told me three or four times then that she wanted me to carry out her will; that everything was in my hands, and she wanted me to see the little girl was taken care of. She told me positively there was no other will in existence." The will referred to by contestant, under which he claimed, had been previously introduced in evidence against proponents' objection, which is the only other error now urged, and will be noticed later.

There was no evidence which in the slightest degree indicated mental incapacity of deceased, by reason of periodical drunkenness, or any cause whatever. There was evidence that she became intoxicated at times, but no evidence in any way indicating want of mental capacity from that cause, or connecting her drunkenness with the making of any will; and her alleged incapacity to make a will by reason of her alleged disposition to become periodically intoxicated was not even submitted to the jury as an issue of fact. The evidence was all addressed to the issues of forgery and undue influence.

It requires no argument to show that the declarations of the deceased were prejudicial, if it was error to admit them. That it was error, we entertain no doubt.

Appellants cite in support of their objections to the evidence typical cases from very early times to the present. These cases state the rule and the principles upon which it rests. They are: *Strode* v. *Russell*, 2 Vern. 620 (1708); *Jackson* v. *Kniffen*, 2 Johns. 31 [1] (1806); *Provis* v. *Reed*, 5 Bing. 435 (1829); *Shailer* v. *Bumstead*, 99 Mass. 112; *Stevens* v. *Vancleve*, 4 Wash. C. C. 262; *Robinson* v. *Brewster*, 140 Ill. 649; [2] *Gibson* v. *Gibson*, 24 Mo. 227; *Jones* v. *Roberts*, 37 Mo. App. 163; *Waterman* v. *Whitney*, 11 N. Y. 157; [3] *In re Palmateer*, 78 Hun, 43; *Bush* v. *Bush*, 87 Mo. 480; *In re Gordon's Will*, 50 N. J. Eq. 397; *Kennedy* v. *Cox*, 64 Tex. 111; *Boylan* v. *Meeker*, 28 N. J. L. 274. And from our own reports: *In re Calkins*, 112 Cal. 296; *In re Kaufman*, 117 Cal. 288; [4] *Estate of James*, 124 Cal. 653. To which may be added *People* v *Rodley*, 131 Cal. 240.

The answer made to these cases is, that this "whole line of authorities refers to cases where a deed, bond, or will has been in fact executed and its execution proved." It is claimed that

---

[1] 3 Am. Dec. 390.                    [3] 62 Am. Dec. 71, and note.
[2] 33 Am. St. Rep. 265.               [4] 59 Am. St. Rep. 179.

the paper filed as a will by proponent "was never established, even by alleged attesting witnesses, or either of them. It was claimed to be a forgery; its execution was not established; and the jury pronounced it a forgery." Contestants rely upon *Throckmorton* v. *Holt*, 12 App. D. C. 552, and cases cited; also, *Johnson* v. *Brown*, 51 Tex. 65; *Hoppe* v. *Byers*, 60 Md. 381; *Colvin* v. *Warfold*, 20 Md. 367; *Neel* v. *Satton*, 40 Pa. St. 483; *Boylan* v. *Meeker*, 28 N. J. L. 274; *Turner* v. *Hand*, 3 Wall. Jr. 88; and sections 1800 and 1850 of the Code of Civil Procedure. *Throckmorton* v. *Holt*, 12 App. D. C. 552, on which respondent relies as a leading case, we are informed was reversed by the United States supreme court on appeal. The decision is not at hand. It is true that in some of the cases cited by appellants the question arose where the fact was that the will had been duly executed and proved by subscribing witnesses, but we cannot say that this fact was regarded as essential to the operation of the rule. We are unable to see why this should be an invariable test by which the rule is to be applied. The danger in admitting declarations would be equally great in both cases. Where the very question under examination is one of execution, how could it be said that the execution had been proved? Such a situation might exist where the proceeding is to revoke a will that had been proved. (Code Civ. Proc., sec. 1327.) But where, as in the present case, the initiatory proceedings are to determine the question of execution or no execution, there could be no such thing as an existing duly executed and proved will to overthrow; the very offer to prove the will is arrested by the contest. The Code of Civil Procedure (sec. 1312) provides that in cases of contested wills "the contestant is plaintiff and the petitioner is defendant." For the purposes of the contest, there are no issues before the jury, except such as are presented by the contestant, and evidence on no other issues can be submitted to the jury. "It is necessary, before the court can admit a will to probate, to require proof of all the acts requisite to constitute the execution of a valid will; but the proof of the acts, as to which the contest is not addressed, will be heard and passed upon by the court alone, and is not to be submitted to or passed upon by the jury" (*Estate of Cartery*, 56 Cal. 470); but so far as contested issues are concerned, the burden of proof is on the contestant; it devolves on him to allege and prove the facts on which he relies to prevent probate of the will; his evidence is

first called for and first submitted, and not until he rests is the proponent called upon 'to submit any evidence; as to matters or acts necessary to a valid will not put in issue by the contest, the contestant has no voice; it is with the court to require the proofs from the proponent. (*Estate of Gharky*, 57 Cal. 274; *Estate of Dalrymple*, 67 Cal. 444; *In re Burrell*, 77 Cal. 479.)

Why should contestant be permitted to attack the will by declarations which would not be admissible in a proceeding to revoke where the will has been proved? We can perceive no good reason. The petition states, among other things, "that said deceased left a will [describing it and offering to produce it] which your petitioner believes and therefore alleges to be the last will and testament of said deceased," etc. It cannot be that the door to declarations of the deceased is thrown wide open, and that a contestant is at liberty to appropriate indiscriminately whatever the deceased may have said in her lifetime in support of the contest, simply because the execution of the will has not been proved; that contestant is permitted to prove by declarations what perhaps he could prove in no other way, solely because as yet the will has not been proved; and this, too, where the orderly course of the proceeding prescribed by the statute places proponent in a position where he can submit no proofs until after the contestant has rested. We cannot believe that the rule governing the admissibility of declarations can depend upon or is controlled by the fact that the proposed will has been already proved or admitted to have been executed by the deceased. There may be a different and greater reason in the one case than in the other, but the principle upon which declarations are excluded as hearsay applies in both cases. The declarations admitted in this case do not go to the question of mental capacity at all; they go directly to the issue of forgery, and undue influence, and fraud, and to the independent substantive fact that deceased did not execute the will in question, by showing that she said in her lifetime that she made no will except that of March 22, 1892. In short, contestant was permitted to prove declarations of the deceased which went to the principal issues in the contest, and did not go, nor were they intended to go, to mental capacity or the state of her mind in any perceptible degree.

It was said in *In re Calkins*, 112 Cal. 296: "Where a will is contested on the ground of undue influence or other like cause,

not drawing into question the mental capacity of the testatrix at the time of its execution, neither her prior nor subsequent declarations are admissible to show either that the influence was exercised or that it affected her actions. . . . To the extent that they purported to be declarations of the acts of others, or of her own acts, they were but matters of hearsay merely, whose truth rested in the veracity of the utterer, and upon which there was no opportunity of cross-examination, or of explanation by the party who had uttered them, and were not entitled to any weight by the jury, and cannot be considered for the purpose of sustaining their verdict. . . . The court should not have permitted evidence to go to the jury of any declarations of the testatrix regarding the statements or acts of those by whose influence it is alleged that she was induced to make the will." These remarks apply equally to the issue of forgery.

It was said in *Estate of James*, 124 Cal. 653, that in cases upon contest of probate of wills, where contestants had claimed that the testator never signed the instrument, or that he signed it under duress or menace, and like cases, " it has always been held that the declarations of the testator as to menace, or duress, or as to the fact of his signature, are hearsay, and cannot be received." The declarations with which we are dealing must have influenced the jury in its conclusions as to the issue of forgery, and this would be sufficient to make a reversal necessary, although the jury found in favor of proponents on the issue of undue influence.

2. The objection to the introduction of the Ash will on the ground that no proof was offered that it was executed by Mrs. Gregory or witnessed by anybody need not be considered. We do not think the objection was sufficiently specific. We cannot consider an objection made in general terms without some specification of the point of incompetency, if the evidence is admissible for any purpose. (*Thompson* v. *Thornton*, 50 Cal. 142; *Brumley* v. *Flint*, 87 Cal. 471; *Crocker* v. *Carpenter*, 98 Cal. 418.) It is not likely the alleged error will be repeated.

It is advised that the order be reversed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the order is reversed.          McFarland, J., Temple, J., Henshaw, J.