[L. A. No. 1719: Department One.—August 30, 1905.]

In the Matter of the Estate of HARRIET M. ARNOLD, Deceased. ALFRED F. ROSENHEIM et al., Contestants, Appellants; ALICE C. WESTGATE, Intervener, Appellant; WILLIAM H. LEONARD et al., Proponents, Respondents.

WILLS—CONTEST OF PROBATE—NONSUIT AND DISMISSAL—RULES APPLICABLE.—In determining whether the evidence on the part of the contestants of a will in opposition to the probate thereof tended to prove the undue influence and fraud charged, and was sufficient to require the submission of the cause to the jury, or would justify a judgment of nonsuit and dismissal of the contest, the same rules apply as in civil cases: that every favorable inference fairly deducible from the evidence and every favorable presumption arising therefrom must be considered as facts proved for the contestants, and all the evidence in favor of the contestants must be taken as true, and contradictory evidence disregarded.

ID.—RIGHT TO VERDICT ON MERITS.—If there is any substantial evidence tending to prove all the facts necessary to sustain the contest, the contestants are entitled to have the case go to the jury for a verdict on the merits. Held, upon review of the evidence, that contestants had such right, and that a judgment of nonsuit and dismissal of the contest was erroneous.

ID.—UNDUE INFLUENCE—BAD FAITH OF PARTY INTERESTED—BELIEF AS TO CONSTRUCTION OF FORMER WILL.—Where it would not be unreasonable for the jury to conclude from all the facts and evidence that the will in question was not uncontrolled, but was the direct result of the fears excited, false beliefs engendered, and sinister

influence exercised over the testator, in bad faith, to procure a change of will to the advantage of the one exercising such influence, the fact of his mere belief that the legal effect of trusts created by a former will was such as he represented it to be would not make the transaction innocent, nor render a will so procured valid.

Id.—EVIDENCE—DEPOSITION OF PROPONENT NOT USED—TESTIMONY OF NOTARY—WAIVER OF OBJECTION—QUESTION UNDETERMINED.—Where contestants, after taking the deposition of the proponent charged with undue influence, did not introduce it, but proved part of the statements of proponent by testimony of the notary who took it, without objection raised to such testimony in the court below, and such evidence was considered by that court in granting the nonsuit, this court will not decide, upon appeal from the judgment of nonsuit, whether the evidence of the notary was competent and admissible against all of the proponents, and the proponents cannot urge upon the appeal that testimony was incompetent and should not be considered by this court in determining whether or not the nonsuit was properly granted.

Id.—CHARACTER AND CONDITION OF PROPERTY—GOOD FAITH OF AGENT—CONDITION OF TESTATRIX.—It was improper to exclude evidence of the character and condition of the property committed by the testatrix to a former agent, supplanted by the proponent charged with undue influence, and to show good faith in his course of conduct, and to show the reasons for a custom of the testatrix to have her checks drawn by such agent and her declarations and complaints of failing eyesight and other bodily ailments not too remote, as showing her physicial condition and dependence upon others.

Id.—DECLARATION AS TO BREAKING OF WILL.—It was error to disallow evidence of the declarations of the proponent that he could break any will of the testatrix that did not provide for him.

Id.—CHANGE OF ATTORNEY BY PROPONENT.—The court should not have stricken out evidence that proponent knew who had been the legal adviser of the testatrix at the time when he called in another attorney for her.

Id.—ACTIVITY IN PROSECUTING FORMER AGENT.—Evidence should have been allowed to show the activity of the proponent in prosecuting the former agent of the testatrix immediately after the execution of the new will.

Id.—CONTROL OF MONEY BY PROPONENT—GIFTS AND ALLOWANCES MADE.—The court should have allowed testimony showing the refusal of the proponent to answer a question whether or not, after he had control of the money of the testatrix, he had appropriated four hundred dollars to his own use by her direction, and to show his statement that she had made him a monthly allowance, and to show that he had issued checks upon her account in favor of his own family after he became her attorney in fact, and that she had made him a gift of four thousand dollars, and that she had made the former agent an allowance at his suggestion. The evi-

dence of his use of her funds soon after the new will was made would tend to prove his influence over her, if made with her knowledge and his intention, if she was not informed thereof.

ID.—PROOF OF FORMER WILLS—CHANGE IN LATER WILL—PROBABILITY OF UNDUE INFLUENCE.—Proof of the contents of two former wills of a similar character was admissible to show a fixed state of mind of the testatrix as to legacies contained in each which were omitted from the later will, and to show that she was of the same mind as to those legacies shortly before the making of the later will, as tending to raise a probability of undue influence.

ID.—DECLARATIONS AND ACTS OF TESTATRIX NOT PART OF RES GESTÆ—PROOF OF STATE OF MIND.—Though the declarations and acts of the testatrix, not part of the *res gestæ*, were not admissible to prove the issue of fraud and undue influence, they were admissible to show the state of mind of the testatrix at the time of the acts and declarations.

ID.—DECLARATIONS AND ADMISSIONS—WHOLE CONVERSATION—QUESTIONS AND ANSWERS.—In proving the declarations or admissions of a party, the whole of the conversation, or questions put as well as answers, are as a rule admissible, unless the court can see from the question that the answer alone shows its full meaning.

ID.—DECLARATIONS OF PROPONENT.—The declarations of the proponent, though admissible against him, were incompetent evidence, admissions, or statements of other persons, or of any independent facts in his favor brought out on cross-examination by his own attorneys and not responsive to the examination in chief.

ID.—FAILING MEMORY AND WEAKNESS OF MIND OF TESTATRIX—DEED AND DECLARATION OF TRUST FORGOTTEN.—Evidence that a deed executed by the testatrix to her agent and his declaration of trust in her favor were read over to her, and as to her statements then made were competent and relevant, as tending to show her subsequent failing memory and weakness of intellect shortly before the will in question was executed, when she seemed to have forgotten them entirely, and appeared to be unable to comprehend them when again read to her.

ID.—EXPLANATION OF ABSOLUTE DEED—GOOD FAITH OF AGENT.—Evidence was admissible to show that the deed absolute in form from the testatrix was made to satisfy a purchaser negotiating for part of the property, who objected to a deed executed by an attorney in fact, as tending to show the good faith of the agent and trustee.

ID.—FALSE STATEMENT BY PROPONENT TO TESTATRIX.—Where evidence had been given of a statement by the proponent to the testatrix that her attorney had said that she had no power to revoke the deed without her agent's consent, it was error not to allow the contestants to prove that the attorney had made no such statement, as showing that the proponent had made a false statement to the testatrix.

APPEAL from a judgment of the Superior Court of San Diego County granting a nonsuit and dismissal of a contest of a will, and from orders admitting the will to probate and appointing executors. N. H. Conklin, Judge.

The facts are stated in the opinion of the court.

C. H. Rippey, and Hunsaker & Britt, for Contestants, Appellants, and Daney & Lewis, for Intervener, Appellant.

Stearns & Sweet, and W. J. Mossholder, for Proponents, Respondents.

SHAW, J.—The contestants of the will of Harriet M. Arnold, deceased, appeal from a judgment of the court below granting a nonsuit and dismissing the proceedings in opposition to the probate of the will of the deceased, executed April 25, 1903, and from the subsequent orders admitting said will to probate and appointing executors. The appellants assign as errors the granting of the motion for nonsuit, and a number of rulings excluding and admitting evidence.

We think the judgment of nonsuit was erroneous. In determining whether or not in a proceeding to contest a will, the evidence produced by the contestants is sufficient to require the submission of the case to the jury the same rules apply as in civil cases. Every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence produced must be considered as facts proved in favor of the contestants. Where evidence is fairly susceptible of two constructions, or if either of several inferences may reasonably be made, the court must take the view most favorable to the contestants. All the evidence in favor of the contestants must be taken as true, and if contradictory evidence has been given it must be disregarded. If there is any substantial evidence tending to prove in favor of the contestants all the facts necessary to make out their case, they are entitled to have the case go to the jury for a verdict on the merits. (*Vermont etc. Co.* v. *Declez,* 135 Cal. 579, [87 Am. St. Rep. 143, 67 Pac. 1057]; *Freese* v. *Hibernia Sav. and L. Soc.,* 139 Cal. 392, [73 Pac. 172]; *Hanley* v. *California etc. Co.,* 127 Cal. 237, [59 Pac. 577]; *Ferris* v. *Baker,* 127 Cal. 522, [59 Pac. 937]; *Goldstone* v. *Merchants etc. Co.,* 123 Cal 625, [56 Pac. 776]; *Zilmer* v. *Gerichten,* 111 Cal. 73, [43 Pac. 408];

*Pacific M. L. I. Co.* v. *Fisher,* 109 Cal. 566, [42 Pac. 134];
*O'Connor* v. *Hooper,* 102 Cal. 528, [36 Pac. 939]; 2 Deering's
Dig., p. 2105.)

The petition for the probate of the will and for letters tes-
tamentary was filed by William H. Leonard, Charles W.
Buker, and C. A. Scott, who are the persons named in the
will as executors. The testatrix died childless at the age of
over eighty years, leaving surviving as her next of kin her
sisters, Mrs. Buker, aged seventy-eight years; Mrs. Wetterson,
aged seventy-five years, and Mrs. Wheelock, aged sixty-eight
years; and two children of a deceased brother,—namely, Wil-
liam H. Leonard and Frank T. Leonard. Mrs. Wetterson has
no child; Mrs. Buker has but one child,—namely, the pro-
ponent Charles W. Buker; Mrs. Wheelock has two children,
Frances W. Rosenheim and Benjamin A. Wheelock. Alfred
F. Rosenheim is the husband of Frances W. Rosenheim. The
estate of the deceased testatrix is conceded to be worth at least
one hundred and forty thousand dollars, and practically all
of it was derived by her from the estate of her deceased hus-
band, Benjamin R. Arnold, who died in 1898, a resident of
San Diego County. The proposed will left seven eighths of
the stock in Pratt, Read & Company, a corporation, which
comprised the principal part of the estate, to William H.
Leonard, as sole trustee, in trust for the use of the three
sisters and a nephew, Frank T. Leonard, during their respect-
ive lives, with remainder absolutely to certain named rela-
tives. Under a former will, executed on April 7, 1902 ,similar
trusts had been declared, but the property was to be converted
into money, and Alfred F. Rosenheim was named as trus-
tee, and as co-executor and co-trustee with Charles W. Buker.
The former will also gave small specific bequests to Alfred
F. Rosenheim, and a legacy of one thousand dollars to Alice
C. Westgate in trust for charitable uses. A contest of the
proposed will was filed by Alfred F. Rosenheim, Frances W.
Rosenheim, and Louise A. Wheelock jointly, and Alice C.
Westgate intervened and filed a separate contest.

The principal grounds of opposition to the probate of the
will were that its execution was procured by means of the
undue influence of William H. Leonard, exercised over the
testatrix for that purpose, and by means of fraud practiced
on her by him.

It is not necessary to state at length the various circumstances tending to prove the undue influence and fraud charged. The direct and circumstantial evidence, together with the inferences and presumptions arising therefrom in favor of the contestants, tended to prove that the contestant Alfred F. Rosenheim, after the death of Mrs. Arnold's husband, and until the visit to her by Leonard in February, 1903, had been her trusted business manager, in charge of her affairs, and had possession of and title to nearly all her property in trust for her use, and for the purpose of carrying out the provisions of her last will after her death; that he was consulted about the making of the will of 1900 and the later will dated April 7, 1902, above mentioned, which, in addition to the provisions above stated also gave a legacy of one thousand dollars to the Young Men's Christian Association; that her feelings toward Rosenheim and his wife were very cordial and friendly, and she reposed in him the utmost confidence, and that he was entirely worthy of her trust and confidence, and faithful to her interests in all his dealings with her property in his charge; that Mr. Leonard during his visit to her, extending from February 4, 1903, to early in May of that year, upon discovering the existence of the trusts committed to Rosenheim and the will of 1902, immediately began to instill into her mind suspicions of the good faith and trustworthiness of Rosenheim and false impressions as to the legal effect of the several instruments creating the trusts under which Rosenheim held the property, finally causing her to believe that Rosenheim had actually deprived her of all her property, that she had nothing left of all the large estate received from the estate of her deceased husband; that he was dishonest and had deceived her, and was unworthy of her trust or confidence; and that under the influence of this unfounded belief she had executed the will of April 24, 1903, in which she did not mention Mr. Rosenheim at all, and by which she made Leonard an executor and sole trustee, and practically substituted him in the position of trust that, by the former will, was to be occupied by Rosenheim and Buker, and also omitted the charitable legacies to Alice C. Westgate and the Young Men's Christian Association contained in the prior will. There were circumstances from which it might have been inferred that Leonard had by these means obtained

great control over the mind and actions of the testatrix, and that he was acting in bad faith for the purpose of procuring the new will to be made, in order to supplant Rosenheim and promote his own advantage. Some of the evidence, it is true, was capable of a different construction, and there was little, if any, direct evidence as to the motives of Leonard, or as to the actual operation of the undue influence. If a jury, upon the evidence given, had found in favor of the disputed will we might not be disposed to disturb the verdict. Questions involving motives, and inferences to be deduced from circumstances, are, within reasonable bounds, exclusively within the province of the jury, or the trial court when sitting without a jury, and under the rules regarding the granting of a nonsuit, they must all be resolved, so far as possible, in favor of the contestants. It would not be unreasonable to conclude upon all the facts and evidence before the jury, that the will in question was not the natural result of the uncontrolled will of Mrs. Arnold, but the direct result of the fears exerted, false beliefs engendered, and sinister influence exercised over her to that end by William H. Leonard. Upon such a case it is error to grant a nonsuit.

It is asserted that Leonard himself believed that the legal effect of the instruments creating the trusts in Rosenheim was as he represented it to be. Even if he did believe this to be the true construction, it would not necessarily alter the case. If he was acting in bad faith for the purpose of procuring the execution of the new will, the fact that he actually believed to be true some of the false representations by which he obtained the undue influence required, would not make the transaction an innocent one, nor render a will so procured valid.

Before the trial the contestants caused the deposition of William H. Leonard to be taken in the cause before a notary public in San Diego, who was also a stenographer and took down the deposition in shorthand, afterwards transcribing it into typewriting. At the time of the trial Leonard was present, and the deposition was duly signed, certified, and on file The contestants did not call him as a witness, nor read the deposition, or any part thereof, in evidence. They pursued the somewhat unusual course of producing the notary as a witness and causing her to testify before the jury to certain

parts of the testimony of Leonard contained in the deposition, refreshing her memory from her shorthand manuscript. Counsel for the proponents insist that such evidence is incompetent; that upon a proceeding to contest a will the several proponents, or one of several legatees or devisees, are not jointly interested so as to make the declarations or admissions of one competent evidence against the others, and that one named as executor, who also petitions for the probate of the will, does not represent the legatees or devisees to the extent that his declarations can be proven to show that the will was procured by undue influence or fraud, although he is also the party charged with the fraud and undue influence, and to some extent benefited by the disputed will. The question is argued by both parties, and counsel for contestants especially urge a decision thereon, because it will arise upon another trial of the case. The authorities are very conflicting on the question and many of the decisions seem to have been not well considered. Mr. Underhill says that the majority of the cases reject such evidence. (2 Underhill on Wills, sec. 163.) There is some doubt as to the accuracy of this statement. (See 49 Cent. Dig., cc. 488-490.) It is not necessary for us to decide the question, and we express no opinion concerning it. Proponents did not object to the testimony, and it was allowed to go to the jury and was considered by the court in deciding the motion for a nonsuit. If timely objection had been made at the trial the contestants upon a decision against them could have introduced in evidence the deposition, or such parts thereof as they deemed material, or could have called Leonard as a witness. The admission of the testimony made it unnecessary for them to do so. Under such circumstances upon an appeal from the judgment of nonsuit, the proponents cannot be heard to say that the evidence was incompetent and should not be considered by this court in determining whether or not the nonsuit was properly granted. (*Wright* v. *Roseberry*, 81 Cal. 91, [22 Pac. 336].) Upon another trial, if similar testimony is not permitted, and the contestants are unwilling to risk their case upon the proposition that such testimony is admissible, they may either examine Leonard as a witness or resort to the deposition on file.

Complaint is made of the exclusion by the court, upon objections by the proponents, of evidence of a number of other

facts and circumstances which it is claimed would also tend
to prove the undue influence and fraud alleged.   In many
instances these complaints are well founded, and, in view of
the probability of another trial it becomes necessary to notice
these exceptions, and point out the proper course to be pur-
sued in the further progress of the case.   We do not mean to
be understood to declare with respect to some of these rulings
that if taken alone they would be so injurious as to justify a
reversal.

The court should have allowed the testimony offered by the
contestants to show the extent and character of the estate of
Mrs. Arnold committed to the charge of Mr. Rosenheim, as
agent and trustee, prior to the making of the disputed will,
together with the causes which led her to give him the power
of attorney, and the general nature and character of the busi-
ness done by him for her after her husband's death and prior
to the revocation of the power in April, 1903, including her
consultations with him as late as March, 1903.   The decision
of the questions at issue depended largely on the degree of
confidence and trust reposed in Rosenheim by Mrs. Arnold
prior to the advent of Mr. Leonard, and upon the faithful-
ness and good faith of Rosenheim as steward of her affairs,
and whether or not he was deserving of her confidence and
trust, or was "crooked," as Leonard suggested to her, and
also whether or not she was accustomed to attend to her busi-
ness herself, or was capable of it without assistance, and on
her affection and disposition toward Rosenheim.   This evi-
dence would have assisted in arriving at the truth on these
subjects, and if favorable to Rosenheim would have been
material to the case of the contestants.   And after the court
permitted the proponents, apparently for the purpose of
showing Rosenheim's bad faith in receiving more than his
services were worth, to introduce evidence that she had given
him a large amount of valuable stock as compensation for his
services aforesaid, the evidence of the character and value of
the property and of the services named became proper to
rebut the imputation of bad faith and dishonesty on his part.
Too much detail need not have been allowed, but the court
should have permitted sufficient evidence on the subject to put
the jury in a position to judge fairly of the previously exist-
ing conditions.   These propositions embrace a large number
of the rulings complained of.

The evidence that Rosenheim in the fall of 1902 and on previous occasions informed Leonard of the state of Mrs. Arnold's affairs and of his doings as her agent should have been admitted. It would tend in some degree to show Leonard's knowledge of the conditions existing when he arrived at her residence in 1903, and enable the jury to judge more intelligently concerning his actions and motives.

The reasons for Mrs. Arnold's custom of having Rosenheim prepare and sign, as her attorney in fact, the checks used by her to pay her current bills, as stated by her at the time she began the custom, would tend to prove her mental condition or business capacity at the time, and proof of such statements by her should have been allowed. Evidence of her complaints of failing eyesight and other bodily ailments as far back as the year 1900 was not too remote and should have been admitted to show her physical condition and dependence on others. (*Donnelly* v. *Rees,* 141 Cal. 63, [74 Pac. 433].)

The feelings of Leonard toward Rosenheim and the testatrix, and other facts and circumstances tending to show a motive inducing him to desire the execution of the new will, or that he was acting in bad faith in creating suspicion of Rosenheim in the mind of the testatrix, were relevant on the issue of fraud and undue influence, although such motive and bad faith would not of themselves be sufficient proof thereof. (*Estate of Betts,* 113 Iowa, 111, [84 N. W. 975]; *Coghill* v. *Kennedy,* 119 Ala. 657, [24 South. 459]; *McLaughlin* v. *McDevitt,* 63 N. Y. 219; 1 Wigmore on Evidence, sec. 396.) For these reasons the court should not have stricken out the evidence that Leonard knew that Mr. Rippey had been Mrs. Arnold's legal adviser at the time he called in another attorney, and should have allowed the testimony showing his refusal to answer the question whether or not after he had obtained control of Mrs. Arnold's money he had appropriated four hundred dollars of it to his own use by her direction, and his statements in regard to the monthly allowance made to him by the testatrix, his issuing of checks upon her account in favor of his own family, after he became her attorney in fact, his activity in instituting proceedings against Rosenheim immediately after the last will was made, his declarations to his sister-in-law that he would break any will of Mrs. Arnold that did not provide for him, and the evidence that

in 1901 Mrs. Arnold made a gift to him of four thousand dollars, and that at Rosenheim's suggestion she made Leonard a monthly allowance of seventy-five dollars beginning in 1901 and continuing up to April, 1903, in connection with the letter written by Rosenheim in December, 1902, informing Leonard of the fact of his agency in the matter. The evidence of his use of her funds soon after the new will was made would also tend to prove his influence over her, if made with her knowledge, and his intentions, if she was not informed thereof.

It was proper to show that the will of 1900 was substantially the same as that of 1902, and to explain the changes made by the latter. This would tend to show a more permanent and fixed state of mind of the testatrix with regard to her general plan for the disposition and administration of her estate as declared by those wills prior to the execution of the disputed will, and bring out in a stronger light the significance of any changes therefrom in the will of 1903 in controversy, and to raise a greater probability that the latter was the product of fraud and undue influence. For the same purpose the contestants should have been permitted to show that shortly before the time of making the last will the testatrix was still as much interested and as favorably disposed as formerly toward the children's home carried on by Mrs. Westgate, and toward the Young Men's Christian Association. Both of these institutions were given legacies by the will of 1902, and neither was mentioned in the will in dispute.

It is claimed by the proponents that the declarations and acts of the testatrix not constituting a part of the *res gestæ* and not made at the very time of the execution of the will in dispute, are not admissible to prove the exercise of the undue influence or the fraud charged. This proposition may be conceded to be correct. There is, however, a distinction between the effect of such declarations and acts to prove the undue influence and fraud, and their effect to prove the state of mind of the testatrix. The distinction is clearly stated in the case of *In re Calkins,* 112 Cal. 301, [44 Pac. 577]. The court say: "The external facts constituting the exercise of undue influence must be established by other evidence than the declarations of the testator. His declarations are incompetent to show either that the influence was exercised, or that

it affected his actions, and are inadmissible, except as they may illustrate his mental state, and give a picture of the condition of his mind contemporaneous with the declarations themselves. Whenever the condition of the mind is a fact which it is desirable to prove, it may be established by such evidence as is competent for that purpose. The mental condition of the individual is made manifest to others by his statements, declarations, conversations, as well as by his conduct, and when the state of a testator's mind at the time of executing the will is the fact to be shown, his contemporaneous declarations or statements furnish the most satisfactory evidence of that fact.'' The question is also carefully considered by Mr. Wigmore in his work on Evidence, (vol. 1, sec. 230, vol. 3, sec. 1738). Whenever the declarations of the testator constitute narratives of the exercise of the undue influence or of the effect of such influence upon him, they are inadmissible for that purpose, whether made before or after the execution of the will. If made at the time of its execution, they may be admissible, if they are so made as to constitute a part of the *res gestæ;* but if not, although made at the time, they are no more competent than if made subsequently. If they are of such character that they also reveal his condition of mind, they may be admissible for that purpose, though not of the *res gestæ;* but their effect must be carefully limited to the question of his condition of mind, and they must not be considered as narrations of the exercise or effect of the undue influence. (*In re McDevitt,* 95 Cal. 26, [30 Pac. 101] ; *Estate of Donovan,* 140 Cal. 396, [73 Pac. 1081] ; *Estate of James,* 124 Cal. 653, [57 Pac. 578] ; *Estate of Gregory,* 133 Cal. 137, [65 Pac. 315] ; *Haines* v. *Hayden,* 95 Mich. 347, [35 Am. St. Rep. 566, 54 N. W. 911] ; *Coghill* v. *Kennedy,* 119 Ala. 664, [24 South. 459] ; *Tyler* v. *Gardiner,* 35 N. Y. 576.)

Minnie Schaffnett, the stenographer who testified to portions of the examination of Leonard at the time he gave his deposition before referred to, was not allowed to testify to the questions put to Leonard by the attorney who conducted the examination, but was required to confine her testimony to the answers made by Leonard. C. H. Rippey also testified as a witness concerning the conversations between himself and Mrs. Arnold, the testatrix. He was not allowed to give the statements made by him to Mrs. Arnold in the course of the conversation, and his testimony was confined to the replies

made by Mrs. Arnold. These rulings were erroneous. Occasionally it may happen in a conversation or upon the examination of a witness, that a declaration by one party to the conversation, or the answer to a question put to a witness, may be so complete in itself that its full meaning can be understood without the aid of the remarks or of the question, as the case may be, to which it is addressed, but this is not usually the case, and the question or previous remarks should always be admitted in evidence, unless the court, having knowledge not disclosed to the jury, can see that the answer alone shows its full meaning.

The declarations of Leonard made in his answers to the questions put to him in taking the deposition above mentioned, were, as we have stated, not introduced in the form of a deposition, but were proven by secondary evidence, consisting of the testimony of the stenographer who took them down in shorthand. Therefore, though they were made under oath, they did not have effect, and were not admitted as the testimony of Leonard, but as his mere declarations or admissions against his interest. Consequently, they were incompetent evidence of statements made by Mrs. Buker in regard to the execution of a trust deed by Mrs. Arnold and Rosenheim, or of any independent facts in his own favor, brought out in his cross-examination of Miss Schaffnett, or afterward, and not connected with his declarations introduced by the contestants on her examination-in-chief. The objections of the contestants to the evidence of such declarations should have been sustained.

The evidence that the deed of Mrs. Arnold to Rosenheim, and his declaration of trust in her favor were read over to her at the time they were executed on April 14, 1902, and her statements at that time as to their purpose and effect were competent and relevant to show her failing memory and weakness of intellect in April, 1903, when she seemed to have forgotten them entirely, and appeared to be unable to comprehend them when they were again read to her.

The contestants should have been allowed to prove, if they could, that the deed to Rosenheim was made absolute in form, because of the fact that a person negotiating with Mr. Scott for the purchase of some of the San Diego real estate had expressed an objection to accepting a deed executed by an

attorney in fact.  This circumstance was pertinent to show the good faith of Rosenheim, and to repel any inference of an improper motive on his part with respect to the execution of the deed by her absolute in form.  They should also have been allowed to show that Mr. Rippey had not told Leonard or Mrs. Arnold that she could not get the trust-deed revoked without Rosenheim's consent.  Testimony had been given to the effect that Leonard had indirectly stated to Mrs. Arnold that Mr. Rippey had declared this to be the law with respect to the deed.  Evidence to the contrary would have shown that Leonard was making false statements to her concerning the effect of the deed.

A number of other rulings are complained of upon which we express no opinion.  They may not occur upon another trial, and the evidence excluded or admitted thereby was not of serious importance.

The judgment and orders appealed from are reversed and the cause remanded for a new trial.

Angellotti, J., and Van Dyke, J., concurred.

Hearing in Bank denied.