[Civ. No. 9964. First Appellate District, Division Two.—May 9, 1936.]

In the Matter of the Estate of MATTIE S. PETERSON, Deceased. EMMA C. BOOS et al., Respondents, v. H. A. HARDINGE et al., Appellants.

Owen D. Richardson, E. M. Rea and Louis R. Deadrich for Appellants.

M. Mitchell Bourquin, Clinton L. Markley, Edward P. Murphy and Harvey C. Miller for Respondents.

SPENCE, J.—The last will of Mattie S. Peterson was admitted to probate on December 20, 1932, and appellant H. A. Hardinge was appointed executor. Under the terms of said will, appellant May Spencer, a friend of the deceased, was named as residuary legatee. On June 3, 1933, a contest and petition for revocation of probate of the will was filed by respondents. Four of the respondents were sisters of John August Peterson, the deceased husband of Mrs. Peterson. The remaining six of the respondents were the children of Oscar Peterson, a deceased brother of said John August Peterson. There were three alleged grounds of contest: (1) Unsoundness of mind; (2) undue influence on the part of Mr. and Mrs. Spencer; and (3) fraud on the part of Mr. and Mrs. Spencer. Upon a trial by jury all of said issues were determined in favor of respondents. This appeal is taken from the judgment revoking the probate of said will.

The main contention of appellants is that the evidence was insufficient to sustain the verdict of the jury upon any of the issues submitted to them. We are of the opinion that this contention must be sustained and we shall therefore briefly set forth the salient facts which appear in the record.

Mattie S. Peterson, deceased, and her husband, John August Peterson, deceased, had lived near Mr. and Mrs. Spencer in Mountain View for about twenty years prior to the death of said John August Peterson on October 17, 1929. After the death of the husband, Mrs. Peterson was taken to the home of one of the respondents in Redwood City where she remained for about three weeks. During that time, and on October 28, 1929, being eleven days after the death of her husband, Mrs. Peterson made what we may term the first will. In that will she left all of her property to the four sisters of her deceased husband. Shortly thereafter and on November 11, 1929, she returned to Mountain View and visited with Mr. and Mrs. Spencer. During her visit, she expressed a desire to have a home of her own stating that she preferred to live alone and to be free to do as she pleased rather than to live with friends or with relatives of her deceased husband. She suggested to Mr. Spencer that she would advance the sum of $1500 for the construction of a three-room cottage on the land of Mr. Spencer with the understanding that she could occupy the same during her lifetime without the payment of rent. This was agreed to by the parties and a written agreement was executed by them in the office of Mr. Hardinge, an attorney at law. The cottage was constructed and thereafter Mrs. Peterson occupied the same for over two years and until the time of her death on August 13, 1932. The evidence shows without contradiction and respondents concede that during all of the time that Mrs. Peterson visited with the Spencers and subsequently occupied the cottage, she was given the best of care and attention by them and particularly during her last illness when she was greatly in need of such care. The evidence further shows without contradiction that Mrs. Crounse was the only one of the ten respondents who ever visited or communicated with Mattie S. Peterson after she went to visit the Spencers and that Mrs. Crounse's visits were confined to the first few weeks after Mrs. Peterson returned to Mountain View. At the time of her death Mrs. Peterson had not seen or heard from any of respondents for a period of over two and a half years.

Respondents claim that shortly after Mrs. Peterson went to live with the Spencers in Mountain View, her attitude toward them began to change. The record may sustain this

claim but the record also discloses ample reasons for the change in attitude. Upon the visits of Mr. and Mrs. Crounse during those first few weeks, they emphatically expressed to Mrs. Peterson and to the Spencers their disapproval of the building of the cottage as planned. Mr. Crounse testified that it had been suggested that Mrs. Peterson should go to some Old People's Home, "but that did not appeal to her". In respondents' brief, they state that when Mr. Crounse expressed his disapproval of the plan to build the cottage, "things began to change". They state that Mrs. Peterson then complained that some of her husband's relatives wanted to put her in an asylum and they further state that the Spencers made them feel that they were not wanted. Shortly thereafter Mr. and Mrs. Crounse called again, but no one came to the door although they claimed that they saw "the curtain moving stealthily". They did not subsequently see or communicate with Mrs. Peterson and, as above stated, none of the other respondents ever saw or communicated with Mrs. Peterson at any time after she returned to Mountain View.

A second will was made by Mrs. Peterson on November 26, 1929, shortly after going back to Mountain View. In this will she made a few bequests including one of $500 to Mrs. Spencer and again named the four sisters of her deceased husband as residuary legatees. The third will, being the will in question here, was executed on March 1, 1930. This will contained a few bequests and Mrs. Spencer was made the sole residuary legatee. While this will was made in the home of Mr. and Mrs. Spencer before the completion of the cottage, neither Mr. nor Mrs. Spencer was present at the time. It was drawn by Mr. Hardinge at the request of Mrs. Peterson and was witnessed by Mr. Hardinge and Mr. Ackerman.

 The testimony offered by respondents in an effort to establish the general mental incompetency of Mrs. Peterson at the time of the making of the will in question was wholly insufficient. We have reviewed the record and do not find that any witness gave an opinion that Mrs. Peterson was of unsound mind or incompetent at any time. Appellants' witnesses testified that in their opinions Mrs. Peterson was of sound mind and some of respondents' witnesses testified to the same effect. In the briefs respondents call attention to the fact that Mrs. Peterson was an elderly woman and had

suffered a stroke a year or two before her husband's death. The evidence as to age was in conflict, respondents claiming that Mrs. Peterson was approximately seventy-eight years old when she made the will in question while there was other evidence to show that she was under seventy. They also offered evidence to show that Mrs. Peterson was somewhat feeble and was not very keen mentally. When respondents' witnesses were asked their opinions regarding her soundness of mind, they made no direct answers. One answered, "I never considered her much more than a child. . . . I don't know just how to describe one whose mental faculties are not keen." Another replied, "Well, I don't know as you would call it exactly in her right mind at all times; she seemed to be—I don't know." The reasons, if they may be called such, which were given for these answers were wholly insufficient to show unsoundness of mind and there was an entire absence of any substantial evidence of general mental incompetency. (*Estate of Finkler*, 3 Cal. (2d) 584 [46 Pac. (2d) 149] ; *Estate of McDonough*, 200 Cal. 57 [251 Pac. 916].) We believe respondents concede that the evidence was insufficient for this purpose as they rely mainly upon a claimed insane delusion to which reference will be hereinafter made.

Respondents discuss the subjects of "Misrepresentation, Fraud and Undue Influence" under one heading. Aside from the evidence upon which the claim of fraud is based, the remaining evidence was wholly insufficient to sustain the finding of undue influence. It was admittedly circumstantial in nature and, if stretched to its limits, it could at most only raise a suspicion of undue influence. Such circumstantial evidence "has the force of proof only when circumstances are proven which are inconsistent with the claim that the will was the spontaneous act of the alleged testator". (*Estate of Leahy*, 5 Cal. (2d) 301 [54 Pac. (2d) 704].) No such circumstances were shown here and under the rules set forth in the authority last cited, we conclude that this evidence cannot be relied upon to sustain the verdict.

We come now to a discussion of the evidence relied upon to sustain the finding of fraud, which evidence is also discussed by respondents in connection with the other issues. Respondents claimed that Mrs. Spencer had told Mrs. Peter-

son that one or more of her husband's relatives wanted to put her in an insane asylum. The only evidence to prove this was the testimony of alleged declarations of Mrs. Peterson, which declarations were admitted over the objection of appellants. It may be further stated that Mrs. Spencer denied making any such statements to Mrs. Peterson. We believe this evidence was insufficient to sustain the finding of fraud for two reasons. First, such declarations of the deceased, even though admitted in evidence, could not be relied upon to prove that the alleged statements had been made to the deceased by Mrs. Spencer. (*Estate of Calkins,* 112 Cal. 296 [44 Pac. 577]; *Estate of Gregory,* 133 Cal. 131 [65 Pac. 315]; *Estate of Donovan,* 140 Cal. 390 [73 Pac. 1081]; *Estate of Arnold,* 147 Cal. 583 [82 Pac. 252]; *Estate of Snowball,* 157 Cal. 301 [107 Pac. 598]; *Estate of Gleason,* 164 Cal. 756 [130 Pac. 872]; *Estate of Casassa,* 98 Cal. App. 97 [276 Pac. 366].) Second, there was no proof of the falsity of the alleged statements. In this connection Mr. Crounse testified that he told Mrs. Peterson that her idea that one of the sisters wanted to put her in an asylum was foolish; but there was no denial by any of the respondents that such was their desire. For aught that appears in the record, all of respondents may have wanted to put Mrs. Peterson in an asylum and they may have so expressed themselves on many occasions. Counsel for respondents take the position that appellants failed to establish the truth of the statement which was attributed to Mrs. Spencer. They overlook the fact that Mrs. Spencer denied making this statement, and even if the making of the statement had been proved, the burden was upon respondents to prove its falsity in support of their charge of fraud. We therefore conclude that the evidence was insufficient to sustain the finding of fraud. We further conclude that said evidence offered in support of the charge of fraud is not helpful to respondents in their attempt to sustain the finding of undue influence.

Returning to the issue of unsoundness of mind, it is respondents' contention that if Mrs. Spencer did not tell Mrs. Peterson that her husband's relatives wanted to put her in an asylum, then the statements of Mrs. Peterson regarding the attitude of her husband's relatives showed that she was suffering from an insane delusion. We are unable

to follow the reasoning of respondents. Assuming that Mrs. Peterson had such a belief regarding the attitude of her husband's relatives, the burden was upon respondents as contestants to show that such belief was not only a mistaken belief but also that it was an insane delusion. (*Estate of Shay*, 196 Cal. 355 [237 Pac. 1079].) Respondents failed to show that such belief was either a mistaken belief or an insane delusion and there is no evidence whatever to support the finding of unsoundness of mind upon this theory.

In view of the conclusions which we have reached, it is unnecessary to discuss the other points raised by appellants.

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.