BATES H. McFARLAND and PAUL V. JANIS, Trustees for HENRY B. GRAHAM and GEORGINE M. GRAHAM, Appellants, v. JOHN E. BISHOP and AMERICAN TRUST COMPANY, Trustees for HENRY B. GRAHAM, DOROTHY M. GRAHAM, et al.

Division One, June 2, 1920.

1. **EQUITY SUIT: Conclusion on Facts: Deference to Chancellor.** The rule of the Supreme Court is to defer somewhat to the findings of the trial court as to the facts of an equity case, and not to disturb such findings unless clearly satisfied that they are against the weight of the evidence; and the rule is especially applicable where there is a great volume of oral testimony conflicting on every material issue in the case.

2. **TRUST AGREEMENT: Fraud and Mistake in Execution: Intoxication: Annullment.** The weight of the evidence in this case shows that no fraud or misrepresentation was practiced by any one upon the maker of an agreement by which he conveyed a large estate to trustees to be held and controlled for himself and his children; that though a hard drinker, he was not intoxicated when he executed it; that he was fully informed of its contents and made no mistake, and was not incapacitated by drink or otherwise, when he signed and delivered it; that he was fully informed that the trustees he had selected would not act unless the clause making it revocable was stricken out, and consented to its elimination and then executed it; that owing to his dissipated habits his affairs were drifting towards bankruptcy, and he wisely determined to turn his property over to competent and responsible trustees to manage, control and hold, and thereby make certain the payment of his debts and a sufficient support for himself for life and the final enjoyment of the *corpus* by his children.

McFarland v. Bishop.

3. ———: **Cash Commission.** Where the trust agreement named a lawyer and a trust company as trustees, and provided that the lawyer was to receive a regular commission of two per cent and the trust company three per cent, and the lawyer informed the maker that the trust company demanded an additional cash commission of three thousand dollars, and the maker wrote them a joint letter authorizing them, "as an inducement and additional compensation for handling" the estate, to pay themselves three thousand dollars "in addition to the compensation provided in said contract," the trust instrument was not in any wise impaired by the lawyer's representations, although he did not tell the maker that he was to share in the additional commissions, for that was the natural inference to be drawn from the instrument itself.

4. ———: **Mistake: Self-serving Declarations.** Statements made by the maker of a trust agreement, before its execution, to third parties, in the absence of defendants, that he was going to place his property in the hands of trustees until his debts were paid and then it would be returned to him, were self-serving, and not competent on the theory that he made a mistake and did not know the instrument was irrevocable by its terms.

5. ———: **Validity Under Statute: Subsequent Wife as Purchaser.** Section 2880, Revised Statutes 1909, declaring a deed of gift or conveyance, in trust, "to the use of the person so making it," "to be void as against creditors, existing and subsequent, and purchasers," is not an enactment in favor of the maker of a trust agreement by which he conveys property to trustees, to hold and manage for his support and the payment of his debts, the *corpus* to be enjoyed by his children after his death. So far as such an agreement is a conveyance to the use of the maker, it would be void as to his creditors and purchasers, in a suit by them; but as to the remainder of the estate conveyed for the use of his children, the statute does not make it void, even as to creditors or purchasers. Hence, if the owner of property, after having executed such trust agreement, marries and he and his wife attempt by another trust agreement to revoke the former and to convey the bulk of the property to other trustees for his and her joint benefit, the statute is not available to such other trustees, in their suit, prosecuted more for the maker's benefit than for either his creditors or his wife, even conceding her to be a purchaser, to have the first agreement annulled.

6. ———: **Contingent Remainder: Created by Deed.** Even though a deed of gift in trust for the benefit of the maker's children gives to them only a contingent remainder, it is not for that reason void or ineffectual. A contingent remainder is an interest in real estate, and there is no reason why its owner cannot by deed give a contingent remainder therein to his children, or why the trust deed by which it is created should be deemed void or for the grantor's use.

7. ———: **Vested Remainder: Postponed Use.** A conveyance to trust-ees for the use of the grantor's named children, to be enjoyed after his death, creates a vested remainder in them, and is not made contingent by the fact that it is to open to let in after-born chil-dren; nor is the vesting of the title postponed by the further fact that their enjoyment of the property is postponed until after the grantor's death and until they reach the age of twenty-five years, for such provision postpones only their right to possession, and not the vesting of the title.

8. ———: ———: **Annuity to Maker: Encumbrance.** A deed of gift to trustees for the use of the grantor's children after his death is not made contingent by the fact that an annuity to the grantor is made payable out of the principal. The annuity to him is but an encumbrance on the property, and simply makes the remainder to the children subject thereto.

9. ———: **When Void As to Creditors and Purchasers: When Other-wise Valid.** A deed of gift to trustees for the grantor's support, the payment of his existing debts and the use of his children after his death, although valid in so far as it is a provision for his children, may be avoided by subsequent purchasers or subsequent creditors of the grantor, in so far and in so far only, as it is for his use; and in a proper proceeding, subsequent creditors or pur-chasers may reach and appropriate the annuity and the income which the instrument reserves to the grantor. But a deed of gift to trustees, without power of revocation, with remainder over, is valid, except as to the income or part reserved to the grantor, which is subject to the rights of creditors and purchasers. [Dis-tinguishing Jamison v. Mississippi Valley Trust Co., 207 S. W. 788.]

10. ———: **Remote Contingencies: Power of Equity.** Remote con-tingencies that the grantor, because of sickness or accident, will need more than the monthly stipend named in the instrument for his support, neither alleged nor proven, will not authorize the set-ting aside of a deed of gift to trustees made in good faith for the benefit of his children. Especially should this be the ruling where the income is large, and the debts have for the most part been paid, and after they are fully paid the trustees are required to pay him the income during his life; and where, if such contingency should arise, it is not beyond the power of a court of equity to de-termine what amount the grantor would be entitled to for extra-ordinary expenses on account of sickness or personal injury.

11. **EQUITY: Relief Against Fraud or Mistake: Clean Hands: In Aid of Divorce.** A court of equity will not set aside a voluntary deed of trust made by a married man to a trustee for the benefit of himself and his children, because by fraud or mistake it omitted certain clauses which he desired inserted, to enabe him to carry out an agreement made with a married woman to marry anl pro-

vide for her, when he should be divorced from his wife and she should be divorced from her husband, such agreement being illegal. He who comes into equity for relief, must come with clean hands.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. T. Jones,* Judge.

AFFIRMED.

*Koerner, Fahey & Young* and *Jourdan, Rassieur & Pierce* for appellants.

(1) The instrument of May 23, 1916, is void as to creditors and purchasers under the provisions of Section 2880, Revised Statutes of Missouri, 1909. Jamison v. Mississippi Valley Trust Co., 207 S. W. 788; Bank v. Watkins, 126 Tenn. 453; Nolan v. Nolan, 218 Pa. 140; McIlvaine v. Smith, 42 Mo. 58. (a) Such conveyances are void as to purchasers whether with or without notice. Lewin on Trust (8 Ed.), p. 75, sec. 20; Underhill's Law of Trust and Trustees (7 Ed.), pp. 114, 115. (b) Such conveyances are void as to purchasers whether they are fraudulent or not. Jamison v. Mississippi Valley Trust Co., 207 S. W. 788; Robinson v. Robards, 15 Mo. 466; Brooks v. Wimer, 20 Mo. 503; Walter v. Wimer, 24 Mo. 63. (c) The interests of Graham's children under the instrument of May 23rd, are entirely contingent, just as were the interests of the children of Bell in the case of Jamison v. Mississippi Valley Trust Co., 207 S. W. 790. They are contingent because the *corpus* of the estate is not reserved to the children, but may be expended by the trustees for Graham, and for his creditors. They are contingent because after Graham's death the trustees are to pay the children only such sums, as in the judgment of the trustees, may be necessary until the children reach the age of twenty-five years. They are contingent on each child of Graham surviving his father and reaching the age of twenty-five years. Emerson v. Hughes, 110 Mo. 627; Godman v. Simmons, 113 Mo. 122; Buxton v. Kroeger, 219 Mo. 224; Eckle v. Ryland, 256 Mo. 424; Emison v. Whittlesey, 55 Mo. 258; DeLassus v. Gatewood, 71 Mo. 379; Warne v. Sorge, 258 Mo. 171. A vested remainder may be disposed of by sale during life

or by will, as the interest of the children under this instrument obviously could not. Dougherty v. Thompson, 67 N. Y. Supp. 200; Oldaker v. Spikey, 210 S. W. 61. (2) The plaintiffs are purchasers in the right of Mrs. Graham and the subsequent creditors. Chilvers v. Rice, 196 Ill. 80; Bank of Commerce v. Chambers, 96 Mo. 459. (3) The court erred in ruling that the declarations of Graham made before and after the instrument of May 23rd was signed should be excluded as "self-serving." The court allowed the defendants to introduce evidence as to supposed conversations by Graham about this time, but refused to allow the plaintiffs to show by various witnesses conversations between such witnesses and Graham in which Graham stated his plans and purposes before the instrument was signed, and in which he stated, after the instrument was signed, that he had made a temporary conveyance in trust. Such declarations were clearly competent. They do not violate the hearsay rule. They have rational probative value and are not excluded by any rule of evidence. 1 Wigmore on Evidence, p. 31, secs. 9, 10; 16 Cyc. 1146, 1176, 1183, 1184; 3 Wigmore on Evidence, secs. 1739, 1790; Mutual Life Ins. Co. v. Hillmon, 145 U. S. 295; State v. Hayward, 62 Minn. 474; Commonwealth v. Trefethen, 157 Mass. 180; Wilson v. State, 33 Ark. 557; Mooney v. Olsom, 22 Kans. 69; Schailer v. Bumstead, 99 Mass. 112; Cross v. Black, 9 Gill and J. 206; Rogers v. Wilson, 12 Amer. Dig. 62; Kyle v. Craig, 125 Cal. 107; State v. Abbott, 8 W. Va. 745; Thomas v. Wheeler, 47 Mo. 363; Allen v. Morris, 244 Mo. 357; Heynbrock v. Harmann, 256 Mo. 21; Minor v. Burton, 228 Mo. 558. An instrument signed under a mistake as to its contents is void. Essex v. Day, 52 Conn. 483; Smith v. Patterson, 53 Mo. App. 66; 16 Cyc. 68; Bleyer v. Bleyer, 219 Mo. 99; Raffel v. Safe Deposit Co., 100 Md. 141; Garnsey v. Munday, 24 N. J. Eq. 243. (4) An instrument that is signed by one who is suffering from the lond-continued excessive use of alcohol to such an extent that he does not understand the instrument is void. Longhead v. Commission Co., 64 Mo. App. 559;

Rogers v. Warren, 75 Mo. App. 271; Mathis v. O'Brien, 137 Ky. 651; Hutcheson v. Tindall, 3 N. Y. Eq. 368; Freeman v. Dwiggin, 55 N. C. 162; Conant v. Jackson, 16 Vt. 335; Marshall v. Billingsly, 7 Ind. 250; Morrison v. McLeod, 22 N. C. 221; Calloway v. Witherspoon, 40 N. C. 128; Scoville v. Barrey, 40 Vt. 288; Hotchkiss v. Fortson, 15 Tenn. 67; Weeks v. Wortman, 84 Neb. 217. (5) Any conveyance made by a client to his attorney from which the attorney derives a profit is voidable and is open to the suspicion of fraud. Underhill's Law of Trust and Trustees (7 Ed.), p. 98; Thompson v. Sterns, 195 S. W. 43; Thomas v. Turner, 87 Va. 1; Tyrrell v. Bank of London, 10 H. L. Cas. 44. (a) An attorney owes a duty of absolute loyalty to his client. If he allows his mind to be subjected to the influence of a secret profit, the client is not bound. Especially is this true where the conveyance is to the attorney in trust and without consideration. Guinan v. Donnell, 201 Mo. 292; Witte v. Storm, 236 Mo. 470; Horner v. Spencer, 95 Pac. 575; Donelvan v. Compian, 20 C. C. A. 30; Montgomery v. Hundley, 205 Mo. 138, 11 L. R. A. (N. S.) 122; Bucher v. Hohl, 199 Mo. 327; Grumley v. Webb, 40 Mo. 444. (b) A voluntary settlement of all of the grantor's property without power of revocation is open to suspicion of undue advantage taken of the settler. Sims v. Brown, 252 Mo. 69; Perry on Trusts (6 Ed.), sec. 104; Everett v. Everett, L. R. 10 Eq. 405; Coutts v. Acworth, L. R. A. Eq. 588; Predieaus v. Lonsdale, 1. De G. J. & S. 433; Underhill's Law of Trusts and Trustees (7 Ed.), p. 93. (c) Donations made between parties occupying a confidential relation will be watched with great jealously by the courts. Every presumption is against them. The burden of proof in such cases is on the grantee. Yosti v. Laughram, 49 Mo. 595; Bradshaw v. Yates, 67 Mo. 221.

*Wilfley, McIntyre, Nardin & Nelson* for respondents.

(1) Section 2880, R. S., 1909, is not applicable to the trust agreement of May 23, 1916. The statute applies

only to conveyances to the use of the grantor. (a) The trust created by the instrument of May 23rd was for the benefit of Graham's creditors, and for the benefit of Graham's children, and to preserve Graham's estate. (b) Section 2880, applies only to voluntary conveyances and does not affect conveyances founded upon a valuable consideration. Eaton's Admr. v. Perry, 29 Mo. 96; Robinson v. Robards, 15 Mo. 459; 18 C. J. pp. 163 and 164; Hutsell v. Crewse, 138 Mo. 1. (c) The instrument created a vested remainder in Graham's children (Dorothy, Marjorie and Henry B.), subject to its opening to let in any after-born children. Waddell v. Waddell, 99 Mo. 338; Heady v. Hollman, 251 Mo. 632; Jones v. Waters, 17 Mo. 589.; Tindle v. Tindle, 167 Mo. 225; Tiedeman, Real Property (3 Ed.), sec. 302; Emerson v. Hughes, 110 Mo. 627; 18 C. J. p. 306; Gates v. Siebert, 157 Mo. 254; Warne v. Sorge, 258 Mo. 162; 13 Cyc. 647; Buxton v. Kroeger, 219 Mo. 261; Doemer v. Doemer, 161 Mo. 399. (d) A conveyance in trust containing no power of revocation, but reserving to the grantor or settler a life use of the property with a vested remainder over to certain persons or a class (as the settler's children) is valid, even though his creditors may in a proper proceeding reach the reserved life estate. See case note, 12 L. R. A. (N. S.) p. 370; Brown v. McGill, 87 Md. 161, 36 L. R. A. 806; Wentzell v. Powder, 100 Md. 36; Pacific Natl. Bank v. Windrum, 133 Mass. 175; Schench v. Barnes, 156 N. Y. 316, 45 L. R. A. 395; Sloane v. Birdsall, 58 Hun, 317. (2) The instrument of May 23, 1916, is valid, although Graham at the time may have been addicted to the use of alcohol. To render an instrument void on the ground of excessive use of alcohol it must clearly appear that there has been a total dethronement of the reason and understanding at the time the instrument is signed. 14 Cyc. 1105; Pomeroy's Equity Jurisprudence, sec. 949; 6 R. C. L. p. 598; Right v. Fisher, 65 Mich. 275; Case Threshing Machine Co. v. Myers, 9 L. R. A. (N. S.) 970; Eaton's Administrator v. Perry, 29 Mo. 96; Conant v. Jackson, 16 Vt. 335; Martin v.

Harsh, 13 L. R. A. (N. S.) 1000, 231 Ill. 384; Saum v. Talbot, 152 Cal. 142; Longhead v. Comm. Co., 64 Mo. App. 559; Cavender v. Waddingham, 5 Mo. App. 465; Rodgers v. Powers, 75 Mo. App. 271; Cutter v. Zollinger, 117 Mo. 101; Masterson v. Sheehan, 186 S. W. 527. (3) At the time he executed the trust agreement of May 23, 1916, Graham was fully advised as to the contents of the instrument and its legal effect, gave his free consent thereto after he had personally read the same and it had been fully explained to him by Mr. Bishop. After Graham had had the benefit of independant counsel in the preparation and as to the meaning of the instrument, he executed it free from fraud, deceit and undue influence. Thornton on Attorneys at Law, p. 277; Bordie v. Ward, 151 Ala. 204; Donahue v. Chicago Cricket Club, 177 Ill. 351; Kidd v. Williams, 56 L. R. A. 880; President Bowdoin College v. Merrett, 75 Feb. 508. (4) The allowance by the trial court to the attorneys of the trustees was proper and reasonable. Pomeroy, sec. 1085; Perry on Trusts (5 Ed.), sec. 910; Coffman v. Gates, 110 Mo. App. 488; Albert v. Sanford, 201 Mo. 133; Denvir v. Park, 169 Mo. App. 350; Jacobs v. Jacobs, 99 Mo. 436.

SMALL, C.—Appeal from the Circuit Court of the City of St. Louis. On May 24, 1916, Henry B. Graham of that city, then about 41 years of age, signed and delivered an agreement dated May 23, 1916, which is sought to be set aside by this proceeding. By said agreement Graham conveyed to the defendants, John E. Bishop, his attorney, and the American Trust Company, as joint trustees, all of his estate, consisting of both real and personal property, all located in St. Louis. The real estate was encumbered and the equities were of the estimated value of $87,200. The personal property, consisting mostly of stocks and bonds, was of the value of about $513,351.81. The yearly gross income from the personal estate was about $32,420. Not including the deeds of trust on the real estate, the amount of his indebtedness was $168,000, and the total yearly fixed

charges, including interest, amounted to $23,246.22. In addition, he owed sundry current bills, amounting to $2,772. The larger part of this indebtedness was held by W. K. Bixby, all of which was secured by stock in the Graham Paper Company, a very prosperous concern, the common stock of which was then paying 27 per cent annual dividends. Afterwards, such dividends were greatly increased, so that from the time the deed of trust was made, until the trial, a period of less than two years, the aggregate dividends on such common stock of which the trustees held 700 shares, was $220 on each share. His net income at the time the first deed of trust was made, over interest and other charges, was about $9,000 per annum, and at the time the petition was filed, it alleges, the gross income from the estate was $5,000 per month.

The deed of trust by which the property was conveyed to the defendants, Bishop and the American Trust Company, as trustees, after reciting that it was made "to make provision for the party of the first part and his children, Dorothy, Marjorie and Henry B. Graham III., and any child or children that may hereafter be born to the party of the first part," and with the power and obligation on the part of the trustee to hold, sell, manage, invest and re-invest said property, and to that end, to undertake to provide for the payment to the then existing debts and obligations of the said Graham, and of all liens and incumbrances upon said property from either sale or by pledging said property, provided that "from the property hereby conveyed to said trustees, or from the income or proceeds of sale of said property, or from any property or proceeds thereof, acquired by the trustees, under the provisions and powers hereof, the said trustees shall pay or provide for the payment of the fixed charges," etc. And also by paragraph 4 it was provided that "from said estate, or from the income or proceeds thereof, said trustees shall during the life time of the party of the first part [said Graham], and the continuance of this trust, pay to the party of the first

part, the sum of $500 per month  .  .  .  and in addition thereto, such further sums, as in the sole discretion of the said trustees, may be necessary and proper to provide for medical and hospital care and treatment, and such extraordinary care and expenses as may arise from bodily injury, sickness or ill health of the party of the first part.'' Then follows a provision that, after all the debts of said Graham have been paid, together with all expenses and indebtedness incurred by the trustees, the said Graham shall receive ''all of the income from said estate.'' It was also then provided as follows in said agreement: ''The trust hereby created shall be a continuing one, and the trust estate shall be held intact subject to the payments hereinabove provided, during the life of the party of the first part, and after his death, the same shall be held for his children in equal parts, and as they severally arrive at the age of twenty-five years the proportionate part of the estate then held by the trustees hereunder shall be paid to said children, except that no child shall receive his or her proportionate part of said estate until one year after the death of the party of the first part. And providing further that the trustees are authorized after the death of the party of the first part from said estate to pay to or on behalf of each of said children such amount as in the judgment of said trustees may be necessary and proper for the support, maintenance, education and comforts of said children.''

At the time said agreement was executed and delivered, the American Trust Company agreed to and did advance some $15,000 or $16,000 to pay off pressing debts secured thereby, and at the time of the trial had paid off about one-half of the total indebtedness, leaving about one-half thereof unpaid, and had also, in the meantime, paid the said Graham $500 per month.

On March 12, 1917, Graham and his then wife made another deed of trust, revoking the deed of trust of May 23, 1916, made to the defendants, Bishop and American Trust Company, and conveying to the plaintiffs, McFarland and Janis, as trustees, all of his property, real

and personal, including that in possession of the defendants, and authorizing them to take possession thereof and, if necessary, to resort to the courts for that purpose. Plaintiff thereupon, on March 14, 1917, demanded of said defendants, trustees, the possession of all the property conveyed to them, and then in their hands, with which demand they refused to comply. Thereupon on March 17, 1917, this suit was brought.

The deed of trust executed to the plaintiffs on March 12, 1917, after conveying all said property, provided that the much larger part thereof in value should be held by said trustees for the joint use and benefit of the said Henry B. Graham and Georgine Graham, his wife, and to the survivor of them, and also contained the following clause:

"In case of the death or divorcement of my wife, prior to my decease, said estate shall vest automatically in said trustees and be thereafter held and administered by them as part of my general estate, under paragraph second hereof, subject to the order, as to alimony, of the court granting such divorce and said joint estate may be changed or revoked at any time prior to such death or divorcement by joint action of myself and my wife, Georgine Graham."

The balance of the property not included in the joint estate in case he died before his wife, was to be held in trust and paid to his children then living and afterwards born, in practically the same manner as in the deed of trust of May 23, 1916. As to this part of the trust estate, a power of revocation was vested in Graham alone. There was also a similar provision for the payment of all existing creditors by the trustees, and like powers of management, control, sale, investment and re-investment, as in the conveyance of May 23, 1916. Also a provision for a payment of $1,000 per month to said Graham, until all debts were paid, and then the whole income from the joint estate was to be paid to his wife and himself jointly, and the income on the balance of his estate to himself. The instrument further provided that in consideration of the

creation of the joint estate in the wife and the husband, the wife relinquished all her rights of dower to her husband in said estate. It was signed by Graham and his wife, Georgine Graham.

The petition, after setting up the execution of these two deeds of trust, charged that the deed of trust of May 23, 1916, made to the defendants, Bishop and American Trust Company, as trustees, was void under Section 2880, Revised Statutes 1909, which provides that all conveyances for the use of the grantor shall be void as to existing creditors and subsequent creditors and purchasers. The petition further alleged that the plaintiffs, as trustees, were purchasers in that they were trustees for the wife and also represented the creditors of said Graham. That it was also void because it was procured by the fraud of the defendant Bishop, in inducing said Graham by false representations as to its contents to execute it. Also, because it was procured by accident and mistake, in that the said Graham, at the time he executed it, supposed that it contained a clause authorizing him to revoke it and change it, and for the return of his property to him, when his debts were paid. That it was also void because said Graham was intoxicated at the time he executed it, and was mentally incapacitated on account of his indulgence in strong drink, and by reason of worry over his daughter's illness, his own bad health, and the trouble with his then wife.

The prayer of the petition is that the agreement of May 23, 1916, be cancelled, and an order be made compelling defendants, Bishop and the American Trust Company, trustees, to deliver possession of the estate to the plaintiffs.

The answer of the defendants put the allegations of the petition in issue.

It appeared from the evidence that said Graham at the time the suit was commenced, had been married four times. His first wife had died, leaving two children, Dorothy and Marjorie. In 1912 his second wife was

divorced; she had one child, Henry B. Graham III. He afterwards married a third time, and in February, 1916, his third wife left him, and went to New York City, where she lived in adultery with another man. By her Graham had no children.

In March, 1916, he became engaged to marry Mrs. Snowden, who was then living with her husband in St. Louis, as soon as he should be divorced from his wife and she from her husband. Both of them employed the same lawyer in St. Louis, to bring their divorce suits for them. Graham's divorce suit was brought in the County of St. Louis, his wife coming on from New York City and being served with process in that county. She failed to appear at the trial. A divorce was granted to him on the 3rd of June, 1916. The wife received $2500 in money, for which she released her rights in his homestead, and made no defense to his suit. Mrs. Snowden brought her suit in the City of St. Louis, and her divorce was granted on the 30th day of June, 1916. On the 1st day of July, Graham eloped with Mrs. Snowden's sister. They went to Decatur, Illinois. They tarried there a day or so, and then went to Indianapolis, where they remained a few days. They then proceeded to Pearl Beach, Michigan, where Graham had a summer home, and the next day they were married. They returned to St. Louis about the 26th of July, in order that Graham might attend a meeting of the Graham Paper Company in which he was a director. Mrs. Snowden then sued him for breach of promise for $100,000, which he compromised for $4,000.

The evidence showed that Graham was a hard drinker, but it was conflicting as to whether or not it incapacitated him from business. Much testimony was introduced *pro* and *con* on this issue. The same is true as to whether or not he was drunk at the time he executed the instrument of May 23, 1916.

There was evidence on the part of the plaintiffs tending to support the allegations of the petition that Graham supposed that said instrument of May 23, 1916,

contained a clause giving him the right to revoke it and providing that his property should be returned to him, when his debts were paid, for the reason, among other things, that he was engaged to marry Mrs. Snowden, when he should be divorced from his then wife, and Mrs. Snowden should be divorced from her husband, and he desired to make a provision for her of greater value than he would be able to do from the $500 per month, and the income of his property, after his debts were paid, reserved to him by said agreement. On the other hand, there was evidence to show that while Graham wanted this reservation in said deed of trust, he was notified a day or so before it was executed, by defendant Bishop, that the Trust Company would not consent to any such reservation and would not act as trustee, except on condition that the said deed of trust was irrevocable. That Mr. Bishop fully explained the deed of trust, as it was made, to Graham, before he executed it, and that he fully understood its contents and was sober and in his right mind when he executed and delivered it.

Likewise, on all other issues in the case, there was much evidence, and it was conflicting. The evidence was all practically oral and delivered in open court before the judge below, who decided all the issues of fact in favor of the defendants, and rendered judgment against the plaintiffs and for the defendants.

After unsuccessfully moving for a new trial, the plaintiffs appealed to this court.

In the view we take of this case, it is not necessary for us to set out the proceedings at the trial, or refer to the very voluminous testimony to any greater extent than we have done, or shall do in the course of the opinion.

I. The record is very voluminous. It would be wholly impracticable to attempt to set out even the substance of the evidence of the various witnesses. The testimony was practically all oral. It was heard by the learned chancellor below, who had a better opportunity to

observe the witnesses and judge of the
**Deference to Trial Court.** weight of their testimony than we have
from the cold type of the record. He found
all the issues of fact for the respondents and against the
appellants. Even had. we some doubt as to the correct-
ness of his conclusion of the facts, we should not be in-
clined to disturb his rulings, because our rule in equity
cases is to defer somewhat to the findings of the lower
court as to the facts, and not to disturb such findings
unless we are clearly satisfied that they are against the
weight of the evidence. This rule is especially appli-
cable when there is such volume of conflicting testimony
by oral witnesses on each side of every issue as is the
case here. But, in this case, the evidence has not
awakened any doubt in our minds as to the soundness of
the conclusion on the facts of the learned chancellor
below. On the other hand, we entirely agree with him
that the weight of the evidence is clearly in favor of
**Fraud and Mistake.** the respondents on the issues in the case.
That there was no fraud or misrepresenta-
tion practiced by any one to induce Graham
to execute the instrument of May 23, 1916, mentioned
in the petition; that he was a hard drinker, but was
not drunk when he executed said instrument; that
he was not incapacitated by drink or otherwise so
that he did not understand it; and that he was fully
informed as to its contents and made no mistake,
when he signed and delivered it. We are also satis-
fied that it was a wise, timely and provident dis-
position for him to make of his property, under all the
circumstances of the case. His affairs, owing to his
dissipated habits, were drifting towards bankruptcy,
and he wisely determined to turn his property over to
competent and responsible trustees to manage and con-
trol it and hold it, so that he could not further waste or
dissipate it, and thereby his existing creditors would
be paid and he would be assured a sufficient support for
life, and the children of his blood and bone would re-
ceive the *corpus* of his estate at his death. We find that
he himself, first thought of and suggested a trusteeship,

as admitted by appellants. This shows that while, in his dissipated condition, he did not think he was competent to successfully handle his affairs, in which we agree with him, he was competent enough to know that fact and to understand and appreciate it, and sensible and sound-minded enough to conclude to put his affairs in. competent hands. The agreement, itself, is strong evidence that he was in his right mind. It is true that at first he desired to have a power of revocation in the trust deed, but when he found he could not obtain a satisfactory trustee without making the trust irrevocable, he concluded, and we think wisely under the circumstances surrounding him, to make the trust irrevocable. In any event, we find he did so with full knowledge and appreciation of the fact, and we see no reason in the proofs to set aside his action or that of the lower court in refusing his demand in that behalf.

II. But, independent of all other considerations, it is said by appellants, that the evidence shows that defendant Bishop misled Graham, as to his receiving one-third of the $3,000 cash commission paid by Graham to the trustees, in addition to the regular com-

Cash Commission.

mission provided for in the deed of trust. The evidence shows that Bishop told Graham that the American Trust Company wanted a cash commission of $3,000 besides the regular commission, and did not inform him that he (Bishop) was to get any part of it. The regular commission was to be five per cent, of which Bishop was to receive two per cent and the Trust Company three per cent. This was provided for in the deed of trust. Both were trustees. It is not claimed that Bishop told Graham that he was not to receive any part of the $3,000 cash commission. But that he told him (Graham) that the Trust Company wanted the $3,000 extra commission. This was true. Bishop did not ask for it. It was the Trust Company which demanded it. But, as there were two trustees, and the commission provided for in the deed of trust was to be divided between them, Graham was, at least, put upon

inquiry by Bishop as to whether he would receive a part of the $3,000 commission, when he told Graham that the Trust Company demanded such commission. The presumption was natural, it seems to us, that this commission would also be divided between the trustees. Furthermore, Bishop prepared and Graham signed the following letter, directed to both the Trust Company and himself, with reference thereto:

"American Trust Co., and John E. Bishop.

St. Louis, Mo.

"Gentlemen: In view of the proposed contract contemplated to be entered into between you and myself for the purpose of handling my property and disposing of it in accordance with that contract, and, as an inducement and additional compensation for handling the matter, I hereby authorize you to pay to yourselves the sum of three thousand dollars in addition to the compensation provided for in said contract, the same to be paid out of the property transferred to you by said contract.

"Yours truly, H. B. GRAHAM."

It may be that Graham did not read, or read carefully, this letter, but Bishop did nothing to prevent him from so doing, and it shows he intended to do nothing to mislead him. We hold, there was nothing improper in the conduct of Mr. Bishop in this regard, and that the deed of trust assailed is in no way impaired thereby.

III. It is also asserted that the lower court erroneously excluded certain declarations alleged to have been made by Graham to third parties, in the absence of defendants, before and after the deed of trust to them was executed and delivered, as to the contents of said instrument. That he told said parties he had made, or was going to make, an instrument, which placed his property in the hands of trustees until his debts were paid and the property was returned to him. The evidence was offered on the theory that it tended to show that Graham made a misake or did not know the contents of the instrument he made. It was, therefore, to prove the truth

of the plaintiff's assertions. The court rejected this testimony, as hearsay and self-serving. We know of no authority holding that a party can make declarations to third parties in his own favor and then have such parties testify to such declarations to sustain the truth of his allegations in the case. The rule is elementary that such declarations are inadmissible. [Gibson v. Gibson, 24 Mo. 227; Bush v. Bush, 87 Mo. 485; Hammond v. Beeson, 112 Mo. 201; Teckenbrock v. McLaughlin, 209 Mo. l. c. 546-9; Weber v. Strobel, 236 Mo. l. c. 663.]

IV. But, it is claimed that Section 2880, Revised Statutes 1909, makes the trust deed to defendants null and void. That section is as follows:

**Statute.** "Every deed of gift and conveyance of goods and chattels, in trust, to the use of the person so making such deed of gift or conveyance, is declared to be void as against creditors, existing and subsequent, and purchasers."

It may be admitted that this section makes the conveyance, so far as it is to the use of Graham, null and void as to creditors and purchasers. But the statute does not make it null and void, even as to creditors and purchasers, so far as it is for the use and benefit of Graham's children. This deed provided for the payment of his then existing debts, and there is nothing in the statute preventing Graham from giving or conveying the remainder of his property to his children or others as against subsequent creditors and purchasers.

Furthermore, this statute does not provide that a conveyance to one's own use shall be void as to him, but only void as to purchasers and creditors. This proceeding is more for the benefit of Graham than for either creditors or his wife, even conceding she is a purchaser. The plaintiffs are not purchasers nor creditors, but simply agents or trustees. This case is, therefore, not bottomed upon the statute relied on, because said statute is not for the benefit of the party making the conveyance. [Sauter v. Leveridge, 103 Mo. l. c. top p. 624.]

V. We hold said deed of trust to defendants is valid as to the defendant trustees and Graham's children.

It is said the remainder to Graham's children is a contingent remainder, void and ineffectual, and that the conveyance to them was, in effect, but for the use and benefit of Graham. We know of no reason why a man cannot by deed give a contingent remainder in his property to his children, or why such conveyance should be deemed void or for the grantor's use. A contingent remainder is an interest in real estate. [Godman v. Simmons, 113 Mo. 123; Sikemeier v. Galvin, 124 Mo. 367.]

*Contingent Remainder.*

But, it is plain enough that the remainder of Graham's children created by the deed of trust assailed is a vested remainder. The children to whom the remainder is given were living and are named, and the fact that the remainder opens to let in after-born children does not make it a contingent remainder. All the children, not simply those living at his death, are to take upon Graham's death, which is sure to occur. The vesting of the title is not postponed after Graham's death, until they reach the age of twenty-five years, but only the enjoyment of the possession of the property is thus postponed. This does not make the remainder contingent, or in any manner militate against its character as a vested remainder. [Barkhoefer v. Barkhoefer, 204 S. W. l. c. 910; Waddell v. Waddell, 99 Mo. l. c. 345; Thomas v. Thomas, 149 Mo. l. c. 433; Doerner v. Doerner, 161 Mo. l. c. 406; Carter v. Long, 181 Mo. l. c. 709; Warne v. Sorge, 258 Mo. 162; Eckle v. Ryland, 256 Mo. 424; Buxton v. Kroeger, 219 Mo. l. c. 261; Heady v. Hollman, 251 Mo. 632.]

It is also urged that the remainder is contingent in the children and void because Graham's $500 per month is payable out of the principal, as well as the income, and therefore might absorb the whole estate. In effect, this monthly charge is but an encumbrance on the property and simply makes the remainder subject thereto. It does not change the nature of the title of the remaindermen any more than an encumbrance on a fee simple

would change the fee simple title. ·Both remain un-changed, except they are subject to the encumbrance. They are in no way made void thereby.

But, we hold that the remaider to Graham's children, whether vested or contingent, was a valid conveyance for the benefit of said children, and not for Graham's. use. It is immaterial, therefore, so far as this case is con-cerned, whether said remainder was vested or contingent.

VI. The deed of trust, being valid as to the provi-sion for the children, may, no doubt, be avoided by sub-sequent purchasers or· subsequent creditors of Graham, in so far, and so far only, as it is for Graham's Creditors   use. In a proper proceeding, subsequent cred-and Purchasers.   itors or purchasers might therefore reach and appropriate the monthly sum of $500 and the income reserved to Graham. [Authorities, infra.]

VII. But, it is said by learned counsel, that it is possible that the vicissitudes of fortune might so reduce the income and value of the property, or might so af-flict Graham personally, that the trustees, in the exercise of their honest discretion, might appropriate, or be compelled to appropriate, the entire estate to the pay-Contingencies.   ment of doctor bills and extraordinary ex-penses for the care of Graham, on account of personal injury or sickness; that even if the creditors or purchasers might secure his monthly stipend, they could not reach that part of the fund necessary to be reserved for Graham's benefit, in case of injury or sick-ness, because that amount is uncertain. The law is a practical science. There is no allegation in the petition and no proof that it ever will be necessary for the trustees, in their honest discretion, to advance any more than $500 per month, or than all the income after Gra-ham's debts are paid, to pay his doctor bills. The peti-tion alleges that the income was $5,000 per month when the suit was brought. At this rate, the debts will all soon be paid, if they have not already been paid, when Graham is entitled to the entire income. The doctor bills

are only payable when necessary, and the amount so payable is in the sole discretion of the trustees.. It is not presumable that they would determine to pay such bills, or any part thereof, if Graham wasted his income in riotous living, so that he would not have enough left to pay doctor bills. The contingency of Graham ever receiving or being entitled to anything for doctor bills, in addition to his regular allowance provided for by the deed of trust, to the detriment of creditors or purchasers, is a most remote possibility, and will not, in a court of equity, be presumed against the allegations of the petition and the evidence in the case, to destroy an estate created in good faith for the benefit of his children.

But, if this contingency should ever happen, it is not beyond the power of a court of equity to determine the amount Graham would be entitled to for such doctor bills and extraordinary expenses on account of sickness or personal injury, or require the trustees to do so, and award it to such creditors or purchasers instead of to Graham.

We must rule this contention also against the appellants.

VIII. But, it is strenuously argued that the case of Jamison v. Mississippi Valley Trust Co., 207 S. W. 788, decided by Division Two of this court, is decisively in favor of the claim of learned counsel for appellants, that under Section 2880, R. S. 1909, the deed of trust of May 23, 1916, to defendant trustees, is void. We are Jamison not of that opinion. That was a proceeding Case. by judgment creditors and could have no application here for that reason alone, as we have already indicated.

In that case, there was no provision for the security of creditors, as in the case at bar. But the grantor conveyed his property to trustees: First, for the benefit of the grantor for five years, and if he died during that time, and in the absence of a will, to his heirs at law, under the laws of Missouri; second, the trustees were to pay to the grantor the net income, as he might de-

mand; third and fourth, the trustees were authorized to sell and manage the property in their discretion; fifth, the trustees were not to pay the grantor more than the income, "except that in case of the extremity of the beneficiaries, or if by misfortune or unavoidable accident the value of the trust estate shall become greatly diminished and imperious necessity affecting the then beneficiary should, in the judgment of the trustees, render it proper to use additional amounts out of the trust estate; . . . as to what is such extremity or imperious necessity and what amount of the principal is necessary to be used, the trustees shall exercise their best discretion and their decisions shall be absolute;" and sixth, the grantor was prohibited from anticipating the income payable to himself, and prohibited from selling or incumbering it, and both principal and interest were declared not subject to his debts or liabilities.

The court held the conveyance to the trustees was wholly for the use of the grantor, and was, therefore, void as to the plaintiffs, under said Section 2880 of the statutes. WHITE, C., delivering the opinion of the court, said, at page 790:

"It was not shown that Bell (the grantor) had any children, or that there was any one answering the description of 'his heirs' in case he should die. This contingent estate, if it may be so construed, depends upon several contingencies: The contingency that he die within five years; the contingency that he leave no will; and the contingency that he have heirs capable of taking. In case of his death without a will, the property would go to his heirs precisely as if no trust had been created; that is, the trust would terminate at the end of five years, or sooner, in the case of his death. He retained control of the contingency by which the title might vest by purchase in his heirs. The restraining barrier set to prevent assault upon the corpus of the estate contained an elastic panel euphemistically designated as 'imperious necessity,' which had already yielded under pressure so as to permit the escape of something near ten per cent of the amount in the trustee's hands."

The cases cited by the court from other states, including also McIlvaine v. Smith, 42 Mo. 45, were all cases where the intent was apparent that the transfer was intended to be and was wholly for the grantor's use, and not, as in the case before us, for his use for life with a clear vested remainder in his children.

Nolan v. Nolan, 218 Pa. St. l. c. 140, 12 L. R. A. (N. S.) 369, cited by the court, was like the case before Commissioner WHITE, and the court, in that case, clearly distinguishes it from cases like the one we have to pass upon, by saying (12 L. R. A. (N. S.) 374):

"What has been said does not in any way disturb the rule in Potter v. Fidelity Ins. Trust & S. D. Co., 199 Pa. 360, 49 Atl. 85, wherein it was held that, where a voluntary, active trust by express terms is made irrevocable, and there has been no failure of the purpose of the trust, and it is not shown that the deed was procured by fraud or imposition, or executed under a misapprehension of the facts or the law, the trust cannot be revoked at the instance of the settlor, but will be enforced in favor of the beneficiaries. That was a controversy between the settlor and the beneficiaries, and the rights of creditors were not considered. Even in that case it was said that one of the reasons for setting aside a voluntary settlement of this character was that it appeared that the design of the deed was to give the settlor full enjoyment of his property for life, with power of testamentary disposition and at the same time protect it from his creditors. This is exactly what the learned court below held the present deed to be, and we concur in that conclusion."

When, however, as in the case at bar, conveyances have been made without power of revocation, and reserving a life estate to the grantor, with remainder over, the conveyances have uniformly been held valid, except as to the income or part reserved to the grantor, which is held subject to the rights of creditors and purchasers. [Brown v. MacGill, 87 Md. 161; Bank v. Windram, 133 Mass. 175; Schenck v. Barnes, 156 N. Y. 316; Low v.

Carter, 21 N. H. 433;   De Hierapolis v. Lawrence; 115 Fed. 761;   Sloan v. Birdsall, 58 Hun, 317;   Jones v. Clifton, 101 U. S. 225;   Curtis v. Leavitt, 15 N. Y. 9.]

IX.  But there is another reason which would lead to an affirmance of this judgment.  The principal complaint in the petition is that a clause in the agreement of May 23, 1916, making defendants, Bishop and American Trust Company, trustees, reserving to said Henry B. Graham, the right of revoking said trust and terminating it upon the payment of his debts and the restoring his property to him, was omitted through the incompetency, mistake or accident of Graham, or fraud of the defendant, Bishop, who drew up said agreement, as the attorney of said Graham.  The evidence shows that if said Graham desired any such clause of revocation in said agreement of May 23, 1916, or a clause restoring said property to him, it was principally for the purpose of enabling him to provide more abundantly than he otherwise could for Mrs. Snowden, as his future wife.  Mrs. Snowden then was a married woman living with her husband in St. Louis.  Graham had for some time visited her almost daily and was engaged to marry her when he should be divorced from his wife, who was then living in adultery with another man in New York City, and Mrs. Snowden should be divorced from her husband with whom she was · then living in the house where Graham visited her.

In fact, the appellants claim in their brief that such was the purpose of said Graham in desiring to have the revocation and return clause inserted in the deed of trust now assailed.  Appellants' learned counsel say in their brief:

"Despite the numerous sharp conflicts, certain facts stand out clearly in the record.  Mr. Graham was intending to get a divorce and to marry Mrs. Snowden. He was heavily in debt and had the idea that the very existence of his estate was threatened by a pending foreclosure of collateral then in the hands of W. K. Bixby.  It was clearly his intention to dispose of his prop-

erty so that his wife would not be able to assert a claim against it and that the collateral in Bixby's hands should be protected and to have the conveyance in such shape that he could modify it to provide for Mrs. Snowden as soon as he was married to her. This was his general purpose."

We are asked, therefore, to exert the powers of a court of equity to set aside an agreement which said Graham made, because by fraud and mistake, it omitted certain clauses which he desired inserted to enable him to carry out an illegal agreement with Mrs. Snowden to marry and provide for her when both he and she were divorced. It is true, that he deserted Mrs. Snowden and eloped with and married her sister, as soon as he and Mrs. Snowden were divorced, and seeks now to have said deed of trust to defendants set aside, not for Mrs. Snowden's benefit but for her sister's. But, the clauses he desired to have inserted in, but which were omitted from, said agreement, being designated to carry out a wholly unlawful contract, he could not have been heard to complain of their omission at the time the agreement was made, and the fact that they would be used for a lawful purpose now (if such were the fact), had they been so inserted, would not purge the plaintiff's case of its original vice and immorality. He who comes into a court of equity for relief must come with clean hands. [Gilmore v. Thomas, 252 Mo. 147; Creamer v. Bivert, 214 Mo. 485; Stillwell v. Bell, 248 Mo. 61.]

X. Complaint is also made of the allowance of $18,000 as compensation to defendant's attorneys for their services in the circuit court in trying this cause. There was evidence taken by the learned court below, which we have examined, as to the value of such service. Attorney's It abundantly supported the allowance. The Fee.       deed of trust to defendants authorized the charge of necessary counsel fees to the trust estate. The lower court, who not only heard the evidence as to the value of such services, but by optical and long continued oral demonstration knew what such services were, made

such allowance as a reasonable charge for such services. We shall not disturb it.

The judgment of the lower court, being without error, is in all things affirmed.

*Brown* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur except *Woodson, J.,* absent.