HENRY C. HYDE et al., Appellants, v. MARGARET HOPKINS et al.
—296 S. W. 382.

Division One, June 25, 1927.

1. **WILL: Life Estate.** A devise to a daughter "and to her bodily heirs" limits the estate given to the daughter to a life estate.

2. ———: **Dying Intestate: Contingent Remainder: Lapse: Reversion: Present Interest: Residuary Clause.** Having by the second clause of his will devised certain lands to his "daughter and to her bodily heirs," the testator by the third clause directing that "the remaining portion of my estate shall be equally divided and apportioned among my other children" was dealing with a present interest and was the owner of a right of reversion in the land previously devised by the second clause, and must be considered as having and expressing an intention to dispose of his entire estate, and therefore by said third or residuary clause he devised to his "other children" the reversion in the lands mentioned in the second clause, which became effective upon the death of the daughter without bodily heirs.

3. ———: **Contingent Remainder: Lapse: Dying Intestate: Residuary Clause.** Where the second clause of the will devised certain lands to testator's "daughter and to her bodily heirs," and the third or residuary clause directed that "the remaining portion of my estate shall be equally divided and apportioned among my other children," and the daughter died without bodily heirs, the result is the same whether the testator possessed a present contingent reversionary interest in the lands devised by the second clause and by the third clause devised it to his "other children," or whether he died intestate as to that reversionary interest. In either event said interest, upon the death of the daughter without bodily heirs, passed to said other children, either as devisees, or as his only heirs.

4. ———: **Lapse of Contingent Remainder: Conveyance.** By the second clause of his will the testator devised certain lands to his "daughter and to her bodily heirs." By the third clause he directed that "the remaining portion of my estate shall be equally divided and apportioned among my other children." His "other children," who were five sons, by warranty deed, conveyed to the daughter all their interests in law or equity in the lands described in the second clause. Thereafter one of the sons died, and four years later the daughter died without bodily heirs, leaving a will by which she devised the lands described in the second clause to defendant. *Held,* that the children of the brother who predeceased the daughter never had a contingent remainder in the lands in which she was given a life estate, and whether the contingent reversionary interest of the testator in those lands was devised to the five sons by the third clause, or whether testator died intestate as to that interest, the deed of the five brothers conveyed it to the daughter, and her will carried the title to defendant.

---

Corpus Juris-Cyc. References: Wills, 40 Cyc., p. 1048, n. 24; p. 1409, n. 4; p. 1411, n. 9; p. 1569, n. 87; p. 1620, n. 70; p. 1950, n. 51.

Appeal from Carroll Circuit Court.—*Hon. Ralph Hughes,* Judge.

AFFIRMED.

*John D. Taylor* for appellants.

During the existence of a life estate the statutory remainder in fee of the heirs of the life tenant's body are contingent in that their identity cannot be definitely determined until such tenant's death. Only upon the occurrence of this event can it be asecrtained who are the heirs who will take the remainder, at which time their contingent interest will become vested. Gates v. Seibert, 157 Mo. 271; Clarkson v. Clarkson, 125 Mo. 281; Nichols v. Robinson, 211 S. W. 14; Schee v. Boone, 243 S. W. 882; Hartnett v. Langan, 282 Mo. 471; Green v. Irvin, 274 S. W. 684.

*Lozier & Morris* for respondents.

(1) It was the distinct purpose and intention of Richard S. Hyde to dispose of all of his estate by his will and by the residuary clause thereof to devise his reversionary rights upon the lapses of the devise under clause 2nd to his five sons. Gillilan v. Gillilan, 278 Mo. 99; Collins v. Whitman, 283 Mo. 383; Chew v. Keller, 100 Mo. 368; Miller v. Ensminger, 182 Mo. 195; Clarkson v. Clarkson, 125 Mo. 381; Payne v. Reece, 297 Mo. 64. (2) While undoubtedly under the residuary clause of the will, the right of reversion was devised to and vested in the five sons of the testator, still if that paragraph be ignored, the children of Richard S. Hyde, under the Statute of Descents and Distribution, inherited a vested contingent remainder, subject to be divested by the birth of children to Ann Elizabeth Hyde, and the interest was alienable and passed to her by the warranty deed made by plaintiffs' father and his brothers. McFarland v. Bishop, 282 Mo. 534; McClure v. Baker, 216 S. W. 1018; Schee v. Boone, 243 S. W. 882; Oldaker v. Spiking, 210 S. W. 59.

LINDSAY, C.—This is a suit to quiet title to about 360 acres of land in Chariton County, and in the second count of the petition partition is asked. The original source of title was Richard S. Hyde, who died in 1871, leaving a will disposing of the lands in controversy, and the determination of the case turns upon the construction to be given to his will.

The five plaintiffs constituting all the heirs of Henry C. Hyde, deceased, a son of Richard S. Hyde, claimed to own each an undivided one twenty-fifth interest in said lands. The construction to be given to the will of Richard S. Hyde turns mainly, perhaps wholly, upon clauses two and three thereof, but in view of the contention made

by .counsel .for plaintiffs; we set out clauses one to five, inclusive, which, are, as· follows:

"1st.　I will and give to my wife Eliza D. Hyde the sum of four thousand dollars in money to be her absolute property and to be disposed of by her as she may see fit and I desire and direct that my executor hereinafter named shall pay over to her as soon as practicable after my decease the said sum of four thousand dollars out of the first moneys that shall come to his hands from any portion of my estate personal or real.　I further will and direct that my said wife Eliza D. Hyde shall have the use and control of the all of the home tract of land together with the 77½ acres adjoining known as the 'Moss Tract' of land during her natural life free of any charge for rents or profits therefor.

"2d.　I will unto my daughter Ann Elizabeth Hyde and to her bodily heirs all of the home tract of land together with all the improvements thereon together also with the 77½ acres of land known as 'Moss Tract' of land.

"3d.　I will and direct that the remaining portion of my estate shall be equally divided and apportioned among my other children viz George W. Hyde, James B. Hyde, Henry C. Hyde, Walter E. Hyde and Lucius D. Hyde.

"4th.　I will and direct that in the final distribution of my estate the amounts heretofore advanced to my sons in the nature of real estate shall be duly accounted for by each of them at the price fixed upon the same at the time of each conveyance.

"5th.　I will and direct that if upon the final distribution of my estate the Home Tract above mentioned and willed to my daughter Ann Elizabeth Hyde shall be found to be not equal in value to the amount received by each of my sons the difference shall be made up equal to her by them and I further direct and will that if the same shall be found to be greater in value than the portion received by them, I desire and direct the whole amount willed to her and herein mentioned and described shall belong to her as willed."

The case was tried and submitted upon an agreed statement of facts, and the judgment was in favor of defendants.

The events shown following the probate of the will of Richard S. Hyde in 1871, and other facts necessary to be considered, are as follows:.

Eliza D. Hyde, widow of Richard S. Hyde, accepted the terms of the will. Ann Elizabeth Hyde, mentioned in clause two, and the five sons of Richard S. Hyde mentioned in clause three, were all living at the time of his death, and were his only children and heirs at law.

In 1873, the five sons mentioned in clause three of the will, including Henry C. Hyde, the father of plaintiffs, for an expressed

consideration of $8,300, conveyed to their sister, Ann Elizabeth Hyde, by a general warranty deed with the usual covenants of warranty, all of their interests at law or in equity in and to the land in controversy. Thereafter, the status of the land and of the children of Richard S. Hyde, deceased, remained unchanged until the year 1904, when said Henry C. Hyde, one of the grantors in said warranty deed, died intestate, leaving the plaintiffs as his only heirs at law. Four years later, in January, 1908, Ann Elizabeth Hyde died, leaving a will by which she devised the land to defendant Margaret Hopkins, subject, however, to certain claims and interests of certain other parties, who were made defendants. Ann Elizabeth Hyde left no heirs of her body, having lived and died single and unmarried.

The contention of counsel for plaintiffs is that the deed made to Ann Elizabeth Hyde by her five brothers was wholly ineffectual so far as concerned Henry C. Hyde, the father of plaintiffs, who died before the death of Ann Elizabeth Hyde. The argument on behalf of defendants is that the five sons of Richard S. Hyde, under the third clause of the will, were contingent remaindermen; that the third clause of the will devised to them the estate in reversion of Richard S. Hyde to said land, an interest which they, including said Henry C. Hyde, could and did convey, and that the interest of Henry C. Hyde was never divested, but became absolute, because Ann Elizabeth Hyde died without heirs of her body, and that she, having taken under the deed to her, the interest in reversion, and dying without heirs of her body, her will passed to defendants the fee to the whole.

The use of the words "bodily heirs" in the third clause limited the estate given to Ann Elizabeth Hyde to a life estate. [Miller v. Ensminger, 182 Mo. 195; Clarkson v. Clarkson, 125 Mo. 381.]

The essential questions in this case are met by the decisions in Gillilan v. Gillilan, 278 Mo. 99, and Collins v. Whittman, 283 Mo. 383, the former a case in Court en Banc, the latter one in Division Two of this court. The nature of the instant case makes pertinent somewhat extended reference to the facts stated and the conclusions announced in those cases.

In Gillilan v. Gillilan the testator, Nathan Gillilan, by the fifth clause of his will devised the lands there in controversy to his son George W. Gillilan, and the heirs of his body thereafter to be born, expressly excluding therefrom the then living children of said George W. Gillilan, born of an existing marriage with his wife Martha. By the ninth clause of the will, Nathan Gillilan devised the "remainder" of his estate to his two sons, said George W. Gillilan, and another son John D. Gillilan, in equal shares. George W. Gillilan later was divorced from his wife Martha, and married again. No child was born of his second marriage. He died leaving a will by

which he devised all of his property to his second wife Gratia Gillilan. At the time of the trial of that case and upon the hearing on appeal, there was pending a contest of the will of said George W. Gillilan. The ruling of the trial court, affirmed on appeal, was, that the children of John D. Gillilan, deceased, took together a one-half interest in the land in controversy. The ruling as to the remaining one-half interest in that land was in the alternative, and contingent upon the result of the contest of the will of George W. Gillilan. It was held that if the will of George W. Gillilan should be adjudged valid and that he died testate, then his widow Gratia Gillilan would take in fee simple the undivided one-half interest in the lands in controversy; but if said will was held to be invalid and George W. Gillilan died intestate, then his two surviving children, the children of his wife Martha, took the undivided one-half interest in said land, subject to the dower and homestead rights of the widow Gratia Gillilan. It was held that the estate remaining in Nathan Gillilan in the land specifically devised under clause five of his will, upon defeat of that devise, for lack of heirs, thereafter born to George W. Gillilan, constituted an estate in reversion to Nathan Gillilan, which Nathan Gillilan could dispose of by residuary clause, and which he had in fact disposed of by clause nine of his will; that Nathan Gillilan did not die intestate as to the reversion in him to the land falling in by lapse of the devise made under clause five, because, in the making of his will, he dealt with his entire estate, and undertook to dispose of all of it, and that the terms of the will and the circumstances disclosed his intention to die testate as to this interest as well as to all other.

It is argued by counsel for plaintiffs that in the instant case it is apparent, considering the whole text of the will, that Richard S. Hyde in clauses two and three was dealing with property in possession specifically, and that the residuary clause, clause three, must be confined in its application to property in which the testator had a present interest. In answer to that, it is enough to say under the holding in Gillilan v. Gillilan, that at the time clause three was inserted in his will, Richard S. Hyde had a present interest, and was the owner of a right of reversion in the land which he had previously devised in clause two of his will, and this reversionary estate was the subject of a valid devise. The provision of clauses four and five do not destroy the force of clause three in its effect upon the property mentioned in clause two, nor overcome the presumption that the testator did not intend to die intestate as to any of his property.

We are of the opinion that since it is clear that Richard S. Hyde was dealing with all of his estate, having in mind not only what he had theretofore given to his sons, but all of the property which then remained to him, he must be considered as having, and expressing

the intention to make disposition of all of his estate by his will. There is nothing shown, in the will itself or otherwise, to overcome the presumption that Richard S. Hyde intended to make a complete disposition of all of his property, and not to die intestate as to any interest therein. Clauses four and five conducive to equality among his six children are in harmony with clause three in the event of lapse of the devise made under clause two. In reaching this conclusion, and additional to what is said in the Gillilan case, Watson v. Watson, 110 Mo. 164, is mentioned as an illustration of the tendency of courts to give to residuary clauses in wills a most liberal construction so as to carry lapsed and void devises, and not a construction which results in partial intestacy.

In Watson v. Watson, the testator by the second clause of his will, devised to his wife for her natural life, 240 acres of land. The other clause, disposing of land, was the seventh clause of the will. He began that clause by saying: "I further will in regard to my other land.". He followed up that statement by saying that his heirs, if they could agree upon a satisfactory division of the lands, might divide them to their own notion, or, if not, and could agree upon a sale, could sell the same, and divide the proceeds among themselves equally. Considering the will as a whole, it was held that there was a clearly expressed purpose on the part of the testator to dispose of all of his property, and all interests therein; and, that while his intention was awkwardly expressed in his use in clause seven of the words, "My other land," yet he intended to include thereby, whatever estate he had in the 240 acres, after carving out the life estate to his wife in the 240 acres. Upon the same question see also Givens v. Ott, 222 Mo. 395, 415; McMahan v. Hubbard, 217 Mo. 637.

If it were held that the will of Richard S. Hyde did not dispose of the contingent reversionary interest, but that he died intestate as to that interest, no different result could be reached in this case under the facts; because, the five sons mentioned in clause three were all of the heirs of the testator, other than the life tenant herself. If they did not take as devisees under clause three, they took as heirs, the same interests, and at the same time. They took the place of Richard S. Hyde. In Collins v. Whittman, supra, the testator, by the first clause of his will, gave his land to his widow, and his son James Harvey Siddens, to hold as long as either should live; and at the death of both, the property was to vest absolutely in the children or heirs of the son, born to him by any woman other than Hattie Siddens, who was then the wife of the son. That will contained no residuary clause. The son was afterward divorced from his wife Hattie, by whom he had one child, a daughter, who survived him. After his divorce he contracted another marriage, but had no children of the second marriage. He died testate, devising all of

his property to the second wife. It was held that he, the son and heir of his father, took the place of his father, and on the death of the latter, took the remainder subject to be divested of the same by the birth of a child or children by another woman than his first wife. The first wife was the plaintiff in that suit, claiming title under a deed to her made by her daughter, the child of James Harvey Siddens. The conclusion announced was that said James Harvey Siddens, having died without children of his second marriage, who could take the remainder, such remainder taken by him by inheritance from his father, passed by his will to his second wife.

The Gillilan and Collins cases were decided upon the theory that in each of them the original testator, "had a right, not a mere possibility of reversion, after carving out so much of his estate as was devised through" a clause of the will creating a life estate, with a remainder in fee to a certain class of heirs of the body of the life tenant. It was this right, and not a mere possibility of reversion, which the five sons of Richard S. Hyde took from him upon his death, whether they be regarded as residuary devisees under the third clause of his will, or as his only heirs other than Ann Elizabeth Hyde, the life tenant. It was this right which Henry C. Hyde and his brothers conveyed by their warranty deed, and it was a right and an interest which was alienable. [McFarland v. Bishop, 282 Mo. 534; Schee v. Boone, 295 Mo. 212.] It was a vested contingent interest, which was never divested, but became absolute in the grantee—in this case the life tenant. In this respect, the case differs from most of the cases upon which counsel relies. Most of them were cases wherein an heir apparent of the body of the life tenant made the deed in question and died leaving heirs of the body, the life tenant being still alive. Expressions used in the opinions in those cases and relied upon by counsel, are to be considered in view of the facts in those cases. This is illustrated in Schee v. Boone, supra, cited for plaintiffs and also for defendants. In that case Loretta B. Schee, the life tenant, whose heirs of the body were to take the remainder, was alive at the time the case was tried and heard on appeal. The plaintiff in that suit, a son of said Loretta Schee, as an heir apparent of her body and also as grantee of his brother, another heir apparent, and as grantee of the still living life tenant, sought such a construction of the will of John Mantle, deceased, as would give to the plaintiff absolute title to the lands; and he asked determination of the title in him: The plaintiff's said brother had died, leaving a daughter. That being so, and the life tenant being alive, he necessarily failed in his action. What was said had reference to the facts in that case, and in no way is opposed to what was held in the Gillilan and Collins cases, or to the conclusions we have stated.

317 Mo. Sup.—38.

·The trial court reached the right result, and its judgment is affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur, except *Gantt, J.,* not sitting.